United States Court of Appeals,

Fifth Circuit.

No. 92-1633.

INNOVATIVE DATABASE SYSTEMS, et al., Plaintiffs-Appellees,

v.

Dan MORALES, in his capacity as Attorney General for the State of Texas, et al., Defendants-Appellants.

May 6, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, DUHÉ, Circuit Judge, and BELEW[1], District Judge.

BELEW, District Judge:

For the reasons assigned and authorities cited by our learned trial court colleague, Judge Robert B. Maloney, in his Order Granting Plaintiffs' Motion for Summary Judgement dated June 24, 1992, attached as an addendum hereto, we AFFIRM.

APPENDIX

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

INNOVATIVE DATABASE SYSTEMS, et al.,

Plaintiffs,

v.

DAN MORALES, et al.,

Defendants.

No. 3:91-CV-1663-T

Filed June 21, 1992.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

---

[1]Senior District Judge, of the Northern District of Texas, sitting by designation.

This matter is before the court on the parties' cross motions for summary judgment. Plaintiffs filed their motion on January 29, 1992. Defendants filed their response and cross motion for summary judgment on April 24, 1992. Plaintiffs filed their response to Defendants' motion and reply in support of their own motion on May 8, 1992. The court, having considered the applicable law and the parties' arguments, is of the opinion that summary judgment should be granted in Plaintiffs' favor.

BACKGROUND

Plaintiffs brought this suit pursuant to the provisions of the Fourteenth Amendment of the United States Constitution; the Ku Klux Klan Act of 1871, 42 U.S.C. § 1983; and Article I, section 8, of the Texas constitution. Plaintiffs seek to enjoin the enforcement of certain laws recently enacted by the Texas legislature. Plaintiffs argue that their rights to commercial free speech have been abridged by two recent amendments to Texas law. The laws sought to be enjoined are House Bill 922, which amends § 35.54 of the Texas Business and Commerce Code, and Senate Bill 857, which amends article 4512b of the Texas Civil Statutes.

Section 35.54, as amended by H.B. 922, entitled "Use of Crime Victim or Motor Vehicle Accident Information Purposes Prohibited," provides:

(a) In this section:

(1) "Crime victim information" means information that is collected or prepared by a law enforcement agency that identifies or serves to identify a person who, according to the records of the law enforcement agency, may have been the victim of a crime in which physical injury to the person occurred or was attempted or in which the offender entered or attempted to enter the dwelling of the person.

(2) "Motor vehicle accident information" means information that is collected or prepared by a law enforcement agency that identifies or serves to identify a person who, according to the records of the law enforcement agency, may have been involved in a motor vehicle accident.

(b) A person who has possession of crime victim or motor vehicle accident information that the person obtained or knows was obtained from a law enforcement agency may not use the information to contact directly a person who is a crime victim or who was involved in a motor vehicle accident or a member of the person's family for the purpose of soliciting business from the person or family member and may not sell the information to another person for financial gain.

(c) The attorney general may bring an action against a person who violates Subsection (b) of this section pursuant to Section 14.47 of this code.

(d) A person who violates Subsection (b) of this section commits an offense. An

offense under this section is a Class C misdemeanor unless the defendant has been previously convicted under this subsection more than two times, in which event the offense is a felony of the third degree.

Tex.Bus. & Comm.Code Ann. § 35.54 (West Supp.1992).

Article 4512b, as amended by S.B. 857, entitled "Practice of chiropractic," provides in pertinent part:

> Sec. 14a. The Texas Board of Chiropractic Examiners may refuse to admit persons to its examinations and may cancel, revoke or suspend licenses or place licensees upon probation for such length of time as may be deemed proper by the Board for any one or more of the following causes:
>
> * * * * * *
>
> 17. If, when uninvited, a licensee or person designated, contracted or paid by licensee directly canvasses, drums, secures or solicits by phone, mail or in person patients or potential patients who, because of their particular circumstances, are vulnerable to undue influence. Circumstances in which patients or potential patients may be considered to be vulnerable to undue influence include but are not limited to:
>
> a. when a person is known by the licensee to have recently been involved in a motor vehicle accident;
>
> b. when a person is known by the licensee to have recently been involved in a work-related accident; or
>
> c. when a person is known to the licensee to have recently been injured by another person or as a result of another person's actions.

Tex.Rev.Civ.Stat.Ann. art. 4512b(14a)(17) (West Supp.1992).

Defendant Morales is the Attorney General of the state of Texas and is responsible for enforcing § 35.54. Defendant James Franklin is president of the Texas Board of Chiropractic Examiners and is responsible for implementing article 4512b. Plaintiff Innovative Database Systems (IDS) is in the business of obtaining accident reports from public agencies and making that information available to its clients, including attorneys and chiropractors, for a fee. Also for a fee, IDS produces and sends client-approved communications to client-selected accident victims. Plaintiff National Association of Accident Injury Victims (NAAIV) provides similar services to its members. Plaintiff David Alexander is a chiropractor licensed by the Texas Board of Chiropractic Examiners.

Section 35.54, as amended by H.B. 922, prohibits IDS and NAAIV from providing accident information obtained from public records to their clients. IDS and NAAIV allege that the

amendments prevent them from practicing their business by making the activity in which they engage illegal.

IDS and NAAIV allege that article 4512b, as amended by S.B. 857, prevents them from engaging in their business. This allegedly results from the authority of the Texas Board of Chiropractic Examiners to suspend or revoke the license of any chiropractor who communicates, without invitation, with any person known to have recently been involved in a motor vehicle accident. IDS and NAAIV allege that this prevents chiropractors from using the services of IDS and NAAIV.

Plaintiffs Backpain and Alexander allege that the amendments to § 35.54 and article 4512b prevent them from sending communications, without invitation, to accident victims, regardless of whether the communications are false, deceptive or misleading.

All of the Plaintiffs argue that the amendments violate their rights under the First Amendment of the United States Constitution, as incorporated by the Fourteenth Amendment, and Article I, section 8 of the constitution of the state of Texas. Both of these laws are alleged to be unconstitutional on their face and as applied to Plaintiffs.

## SUMMARY JUDGMENT STANDARD

Summary judgment should only be entered where the record establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant bears the burden of establishing the propriety of summary judgment. *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986).

Once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law will identify what facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute as to a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510.

## DISCUSSION

I

The parties are in agreement that both of the laws in question place restrictions on commercial speech. However, Defendants argue that the restrictions are reasonable and comport with the United States Constitution.

In 1985, the Supreme Court held that "[c]ommercial free speech that is not false or deceptive and does not concern unlawful activities ... may be restricted only in the service of a substantial government interest, and only through means that directly advance that interest." *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,* 471 U.S. 626, 638, 105 S.Ct. 2265, 2275, 85 L.Ed.2d 652 (1985). The regulation of commercial speech may extend only so far as the interest it serves. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York,* 447 U.S. 557, 565, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980). Thus, state rules designed to prevent the "potential for deception and confusion ... may be no broader than reasonably necessary to prevent the deception." *In re R.M.J.,* 455 U.S. 191, 203, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982).

Applying these principles in *Zauderer,* the Supreme Court struck down an Ohio rule that categorically prohibited advertisements for solicitation of legal employment regarding a specific legal problem, even if such advertisements were truthful and not deceptive. The Court distinguished *Zauderer* from *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978), where the Court held that a state may categorically ban in-person solicitation. The distinction was based on the Court's determination that "unique features of in-person solicitation by lawyers [that] justified a prophylactic rule prohibiting lawyers from engaging in such solicitation for pecuniary gain" are not present in the context of written advertisements. *Zauderer,* 471 U.S. at 641-42, 105 S.Ct. at 2277.

In *Shapero v. Kentucky Bar Ass'n,* 486 U.S. 466, 474, 108 S.Ct. 1916, 1922, 100 L.Ed.2d 475 (1988), the Supreme Court stated the relevant inquiry in determining whether lawyer solicitation may be prohibited "is not whether there exist potential clients whose "condition' makes them susceptible, but whether the mode of communication poses a serious danger that lawyers will exploit any such susceptibility." *Id.* at 474, 108 S.Ct. at 1922. The Court discussed the inherent differences between in-person solicitation and targeted, direct-mail solicitation. *Id.* at 475, 108 S.Ct. at 1922.

The Court further held that "merely because targeted, direct-mail solicitation presents lawyers with opportunities for isolated abuses or mistakes does not justify a total ban on that mode of protected commercial speech." *Id.* at 476, 108 S.Ct. at 1923. Any potential abuses can be regulated through far less restrictive and more precise means. The Court stated that "the most obvious of [these less restrictive means] is to require the lawyer to file any solicitation letter with a state agency ... giving the state ample opportunity to supervise mailings and penalize actual abuses." *Id.*

Defendants advance several interests which they argue justify the prohibitions imposed by H.B. 922 and S.B. 857. First, Defendants argue that Texas has a "very substantial interest in promoting the ethical standards that are necessary in its licensed professions, particularly in the legal profession." The court in no way disputes this contention. The Kentucky Bar Association undoubtedly had the same interest when it enacted the regulation struck down by the Supreme Court in *Shapero.* What is disputed, and what is fatal to the laws in question, is the means by which Texas is attempting to achieve its goals. A total ban on the use of lawfully obtained, public information to contact any person who was recently involved in a motor vehicle accident or who has been the victim of a crime is too broad a prohibition to prevent the perceived evil.

Texas also argues that it has a substantial interest in preventing fraud and misrepresentation by professionals. The propriety of this interest is also undisputed by Plaintiffs or the court. However, as discussed above, the laws in question are not sufficiently tailored to advance this interest and at the same time protect Plaintiffs' rights to commercial free speech.

Finally, Defendants argue that the state has a substantial interest in "protecting the public from unnecessary inflated insurance rates." Defendants argue that increased insurance rates are a necessary result of insurance fraud or even a potential for insurance fraud. Again, this may be true. However, the court is unpersuaded that a complete prohibition on the use of the information in question is a sufficiently tailored means of protecting the stated interest.

The court recognizes that commercial speech is afforded only a "limited measure of protection." *Ohralik,* 436 U.S. at 455-56, 98 S.Ct. at 1918. Despite this fact, Supreme Court precedent prevents this court from upholding a law, even an apparently sound law like the one in

question, when the law goes too far in attempting to achieve its stated goal.

## II

H.B. 922 prohibits the sale "for financial gain" of "motor vehicle accident information" obtained from the public records of a law enforcement agency. Plaintiffs argue that this also constitutes an unconstitutional restriction of commercial speech. The Supreme Court has repeatedly held that states may not prohibit the commercial publication of matters of public record. *The Florida Star v. B.J.F.,* 491 U.S. 524, 535, 109 S.Ct. 2603, 2610, 105 L.Ed.2d 443 (1989); *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975); *Smith v. Daily Mail Publishing,* 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979).

Section 35.54 makes no distinction between the following types of information to be sold for financial gain: (1) information of public record and information not of public record; (2) information lawfully obtained and information not lawfully obtained; (3) information which is truthful and information which is not truthful. Also, § 35.54 makes no distinction concerning the content or the nature of the information in the communication. Plaintiffs argue that this broad prohibition on the sale of motor vehicle accident information is "plainly unconstitutional."

The same state interests discussed above have been advanced in support of this aspect of H.B. 922. The court is of the opinion that the outright ban on the sale of public information, with no regard for the truth of the information, is too broad a means of effectuating the intended purpose of the law.

## CONCLUSION

For the foregoing reasons, the court concludes that H.B. 922 and S.B. 857 are unconstitutional. Therefore, Defendants must be enjoined from enforcing these laws.

It is therefore ORDERED that Plaintiffs' January 29, 1992, motion for summary judgment is granted.

It is **FURTHER ORDERED** that Defendants' April 24, 1992, motion for summary judgment is denied.

It is **FURTHER ORDERED** that Texas House Bill 922 and Texas Senate Bill 857 are

unconstitutional on their face, and Defendants and their agents are enjoined from enforcing these statutes.

Signed this 24th day of June 1992.

/s/ Robert B. Maloney

Robert B. Maloney

U.S. District Judge