# LOS ANGELES POLICE DEPARTMENT *v.* UNITED REPORTING PUBLISHING CORP.

No. 98-678.   Argued October 13, 1999—Decided December 7, 1999

REHNQUIST, C. J., delivered the opinion of the Court, in which O'CON-NOR, SCALIA, SOUTER, THOMAS, GINSBURG, and BREYER, JJ., joined. SCALIA, J., filed a concurring opinion, in which THOMAS, J., joined, *post*, p. 41. GINSBURG, J., filed a concurring opinion, in which O'CONNOR, SOUTER, and BREYER, JJ., joined, *post*, p. 42. STEVENS, J., filed a dissenting opinion, in which KENNEDY, J., joined, *post*, p. 44.

*Thomas C. Goldstein* argued the cause for petitioner. With him on the briefs were *David Boies, James K. Hahn,* and *Frederick N. Merkin.*

*Edward C. DuMont* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Waxman, Acting Assistant Attorney General Ogden, Deputy Solicitor General Kneedler, Leonard Schaitman,* and *John S. Koppel.*

*Bruce J. Ennis* argued the cause for respondent. On the brief were *Guylyn R. Cummins* and *Marcelle E. Mihaila.**

---

*A brief of *amici curiae* urging reversal was filed for the State of New York et al. by *Eliot Spitzer,* Attorney General of New York, *Preeta D. Bansal,* Solicitor General, *Peter H. Schiff,* Deputy Solicitor General, and *Daniel Smirlock,* Assistant Attorney General, and by the Attorneys General for their respective States as follows: *Bill Lockyer* of California, *Ken Salazar* of Colorado, *M. Jane Brady* of Delaware, *Margery S. Bronster* of Hawaii, *Alan G. Lance* of Idaho, *Thomas J. Miller* of Iowa, *Richard P. Ieyoub* of Louisiana, *Frankie Sue Del Papa* of Nevada, *Betty D. Montgomery* of Ohio, *Charles M. Condon* of South Carolina, and *Christine O. Gregoire* of Washington.

Briefs of *amici curiae* urging affirmance were filed for the Direct Marketing Association by *Robert L. Sherman;* for the Individual Reference Services Group et al. by *Ronald L. Plesser, James J. Halpert,* and *Emilio W. Cividanes;* for Investigative Reporters and Editors, Inc., by *David*

34

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

California Govt. Code Ann. § 6254(f)(3) (West Supp. 1999) places two conditions on public access to arrestees' addresses—that the person requesting an address declare that the request is being made for one of five prescribed purposes, and that the requester also declare that the address will not be used directly or indirectly to sell a product or service.

The District Court permanently enjoined enforcement of the statute, and the Court of Appeals affirmed, holding that the statute was facially invalid because it unduly burdens commercial speech. We hold that the statutory section in question was not subject to a "facial" challenge.

Petitioner, the Los Angeles Police Department, maintains records relating to arrestees. Respondent, United Reporting Publishing Corporation, is a private publishing service that provides the names and addresses of recently arrested individuals to its customers, who include attorneys, insurance companies, drug and alcohol counselors, and driving schools.

Before July 1, 1996, respondent received arrestees' names and addresses under the old version of § 6254, which generally required state and local law enforcement agencies to make public the name, address, and occupation of every individual arrested by the agency. Cal. Govt. Code Ann. § 6254(f) (West 1995). Effective July 1, 1996, the state legislature amended § 6254(f) to limit the public's access to arrestees' and victims' current addresses. The amended statute provides that state and local law enforcement agencies shall make public:

Brian Smallman; for the Newsletter Publishers Association by James E. Grossberg and Jay Ward Brown; for the Reporters Committee for Freedom of the Press et al. by Jane E. Kirtley, Samuel P. Spencer, Richard M. Schmidt, and Xenia M. Boone; and for the Washington Legal Foundation by David H. Remes, Daniel J. Popeo, and Richard A. Samp.

"[T]he current address of every individual arrested by the agency and the current address of the victim of a crime, where the requester declares under penalty of perjury that the request is made for a scholarly, journalistic, political, or governmental purpose, or that the request is made for investigation purposes by a licensed private investigator . . . except that the address of the victim of [certain crimes] shall remain confidential. Address information obtained pursuant to this paragraph shall not be used directly or indirectly to sell a product or service to any individual or group of individuals, and the requester shall execute a declaration to that effect under penalty of perjury." Cal. Govt. Code Ann. § 6254(f)(3) (West Supp. 1999).

Sections 6254(f)(1) and (2) require that state and local law enforcement agencies make public, *inter alia,* the name, occupation, and physical description, including date of birth, of every individual arrested by the agency, as well as the circumstances of the arrest.[1] Thus, amended § 6254(f) limits access only to the arrestees' addresses.

---

[1] Section 6254(f) provides, in pertinent part:

"Other provisions of this subdivision notwithstanding, state and local law enforcement agencies shall make public the following information, except to the extent that disclosure of a particular item of information would endanger the safety of a person involved in an investigation or would endanger the successful completion of the investigation or a related investigation:

"(1) The full name and occupation of every individual arrested by the agency, the individual's physical description including date of birth, color of eyes and hair, sex, height and weight, the time and date of arrest, the time and date of booking, the location of the arrest, the factual circumstances surrounding the arrest, the amount of bail set, the time and manner of release or the location where the individual is currently being held, and all charges the individual is being held upon, including any outstanding warrants from other jurisdictions and parole or probation holds.

"(2) Subject to the restrictions imposed by Section 841.5 of the Penal Code, the time, substance, and location of all complaints or requests for assistance received by the agency and the time and nature of the response

Before the effective date of the amendment, respondent sought declaratory and injunctive relief pursuant to Rev. Stat. § 1979, 42 U. S. C. § 1983, to hold the amendment unconstitutional under the First and Fourteenth Amendments to the United States Constitution. On the effective date of the statute, petitioner and other law enforcement agencies denied respondent access to the address information because, according to respondent, "[respondent's] employees could not sign section 6254(f)(3) declarations." Brief for Respondent 5. Respondent did not allege, and nothing in the record before this Court indicates, that it ever "declar[ed] under penalty of perjury" that it was requesting information for one of the prescribed purposes and that it would not use the address information to "directly or indirectly . . . sell a product or service," as would have been required by the statute. See § 6254(f)(3).

Respondent then amended its complaint and sought a temporary restraining order. The District Court issued a temporary restraining order, and, a few days later, issued a preliminary injunction. Respondent then filed a motion for summary judgment, which was granted. In granting the motion, the District Court construed respondent's claim as

thereto, including, to the extent the information regarding crimes alleged or committed or any other incident investigated is recorded, the time, date, and location of occurrence, the time and date of the report, the name and age of the victim, the factual circumstances surrounding the crime or incident, and a general description of any injuries, property, or weapons involved. The name of a victim of any crime defined by Section 220, 261, 262, 264, 264.1, 273a, 273d, 273.5, 286, 288, 288a, 289, 422.6, 422.7, 422.75, or 646.9 of the Penal Code may be withheld at the victim's request, or at the request of the victim's parent or guardian if the victim is a minor. When a person is the victim of more than one crime, information disclosing that the person is a victim of a crime defined by Section 220, 261, 262, 264, 264.1, 273a, 273d, 286, 288, 288a, 289, 422.6, 422.7, 422.75, or 646.9 of the Penal Code may be deleted at the request of the victim, or the victim's parent or guardian if the victim is a minor, in making the report of the crime, or of any crime or incident accompanying the crime, available to the public in compliance with the requirements of this paragraph."

presenting a facial challenge to amended § 6254(f). *United Reporting Publishing Corp.* v. *Lungren,* 946 F. Supp. 822, 823 (SD Cal. 1996). The court held that the statute was facially invalid under the First Amendment.

The Court of Appeals affirmed the District Court's facial invalidation. *United Reporting Publishing Corp.* v. *California Highway Patrol,* 146 F. 3d 1133 (CA9 1998). The court concluded that the statute restricted commercial speech, and, as such, was entitled to " 'a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values.' " *Ibid.* (quoting *Ohralik* v. *Ohio State Bar Assn.,* 436 U. S. 447, 456 (1978)). The court applied the test set out in *Central Hudson Gas & Elec. Corp.* v. *Public Serv. Comm'n of N. Y.,* 447 U. S. 557, 566 (1980), and found that the asserted governmental interest in protecting arrestees' privacy was substantial. But, the court held that "the numerous exceptions to § 6254(f)(3) for journalistic, scholarly, political, governmental, and investigative purposes render the statute unconstitutional under the First Amendment." 146 F. 3d, at 1140. The court noted that "[h]aving one's name, crime, and address printed in the local paper is a far greater affront to privacy than receiving a letter from an attorney, substance abuse counselor, or driving school eager to help one overcome his present difficulties (for a fee, naturally)," and thus that the exceptions "undermine and counteract" the asserted governmental interest in preserving arrestees' privacy. *Ibid.* Thus, the Court of Appeals affirmed the District Court's grant of summary judgment in favor of respondent and upheld the injunction against enforcement of § 6254(f)(3). We granted certiorari. 525 U. S. 1121 (1999).

We hold that respondent was not, under our cases, entitled to prevail on a "facial attack" on § 6254(f)(3).

Respondent's primary argument in the District Court and the Court of Appeals was that § 6254(f)(3) was invalid on its

face, and respondent maintains that position here. But we believe that our cases hold otherwise.

The traditional rule is that "a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." *New York* v. *Ferber*, 458 U. S. 747, 767 (1982) (citing *Broadrick* v. *Oklahoma*, 413 U. S. 601, 610 (1973)).

Prototypical exceptions to this traditional rule are First Amendment challenges to statutes based on First Amendment overbreadth. "At least when statutes regulate or proscribe speech . . . the transcendent value to all society of constitutionally protected expression is deemed to justify allowing 'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.'" *Gooding* v. *Wilson*, 405 U. S. 518, 520–521 (1972) (quoting *Dombrowski* v. *Pfister*, 380 U. S. 479, 486 (1965)). "This is deemed necessary because persons whose expression is constitutionally protected may well refrain from exercising their right for fear of criminal sanctions provided by a statute susceptible of application to protected expression." *Gooding* v. *Wilson*, *supra*, at 520–521. See also *Thornhill* v. *Alabama*, 310 U. S. 88 (1940).

In *Gooding*, for example, the defendant was one of a group that picketed an Army headquarters building carrying signs opposing the Vietnam war. A confrontation with the police occurred, as a result of which Gooding was charged with " 'using opprobrious words and abusive language . . . tending to cause a breach of the peace.'" 405 U. S., at 518–519. In *Thornhill*, the defendant was prosecuted for violation of a statute forbidding any person to " 'picket the works or place of business of such other persons, firms, corporations, or associations of persons, for the purpose of hindering, delay-

ing, or interfering with or injuring any lawful business or enterprise . . . .'" 310 U. S., at 91.

This is not to say that the threat of criminal prosecution is a necessary condition for the entertainment of a facial challenge. We have permitted such attacks on statutes in appropriate circumstances where no such threat was present. See, *e. g., National Endowment for Arts* v. *Finley,* 524 U. S. 569 (1998) (entertaining a facial challenge to a public funding scheme); *Suitum* v. *Tahoe Regional Planning Agency,* 520 U. S. 725 (1997) (entertaining a landowner's facial challenge to a local redevelopment plan); *Anderson* v. *Edwards,* 514 U. S. 143 (1995) (entertaining a facial challenge to a state regulation restructuring the disbursal of welfare benefits).

But the allowance of a facial overbreadth challenge to a statute is an exception to the traditional rule that "a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." *Ferber, supra,* at 767 (citing *Broadrick, supra,* at 610). This general rule reflects two "cardinal principles" of our constitutional order: the personal nature of constitutional rights and the prudential limitations on constitutional adjudication. 458 U. S., at 767. "By focusing on the factual situation before us, and similar cases necessary for development of a constitutional rule, we face 'flesh and blood' legal problems with data 'relevant and adequate to an informed judgment.'" *Id.,* at 768 (footnotes omitted).

Even though the challenge be based on the First Amendment, the overbreadth doctrine is not casually employed. "Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment, we have recognized that the overbreadth doctrine is 'strong medicine' and have employed it with hesitation, and then 'only as a last resort.'" *Id.,* at 769 (citing *Broadrick, supra,* at 613). "'[F]acial overbreadth adjudication is an exception to our

traditional rules of practice and . . . its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws . . . .'" 458 U. S., at 770 (quoting *Broadrick, supra,* at 615). See also *Board of Airport Comm'rs of Los Angeles* v. *Jews for Jesus, Inc.,* 482 U. S. 569 (1987).

The Court of Appeals held that §6254(f)(3) was facially invalid under the First Amendment. Petitioner contends that the section in question is not an abridgment of anyone's right to engage in speech, be it commercial or otherwise, but simply a law regulating access to information in the hands of the police department.

We believe that, at least for purposes of facial invalidation, petitioner's view is correct. This is not a case in which the government is prohibiting a speaker from conveying information that the speaker already possesses. See *Rubin* v. *Coors Brewing Co.,* 514 U. S. 476 (1995). The California statute in question merely requires that if respondent wishes to obtain the addresses of arrestees it must qualify under the statute to do so. Respondent did not attempt to qualify and was therefore denied access to the addresses. For purposes of assessing the propriety of a facial invalidation, what we have before us is nothing more than a governmental denial of access to information in its possession. California could decide not to give out arrestee information at all without violating the First Amendment.[2] Cf. *Houchins* v. *KQED, Inc.,* 438 U. S. 1, 14 (1978).

To the extent that respondent's "facial challenge" seeks to rely on the effect of the statute on parties not before the Court—its potential customers, for example—its claim does not fit within the case law allowing courts to entertain facial

---

[2] Respondent challenged the statute as a violation of equal protection under the Fourteenth Amendment, but the Court of Appeals did not pass on that challenge, nor do we.

challenges. No threat of prosecution, for example, see *Gooding*, or cutoff of funds, see *NEA*, hangs over their heads. They may seek access under the statute on their own just as respondent did, without incurring any burden other than the prospect that their request will be denied. Resort to a facial challenge here is not warranted because there is "[no] possibility that protected speech will be muted." *Bates* v. *State Bar of Ariz.*, 433 U. S. 350, 380 (1977).

The Court of Appeals was therefore wrong to facially invalidate § 6254(f)(3). Respondent urges several grounds as alternative bases for affirmance, but none of them were passed on by the Court of Appeals and they will remain open on remand if properly presented and preserved there.

The judgment of the Court of Appeals is accordingly

*Reversed.*

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, concurring.

I join the Court's opinion because I agree that, insofar as this case presents a facial challenge to the statute, the fact that it is formally nothing but a restriction upon access to government information is determinative. As the Court says, that fact eliminates any "chill" upon speech that would allow a plaintiff to complain about the application of the statute to someone other than himself.

I understand the Court's opinion as not addressing the as-applied challenge to the statute, and as leaving that question open upon remand. That seems to me a permissible course, since the Court of Appeals' judgment here affirmed without qualification the judgment of the District Court, which rested exclusively upon the facial unconstitutionality of the statute and hence purported to invalidate it in all its applications. Though there are portions of the Court of Appeals' opinion that address the particular circumstances of this respondent, I do not read it as narrowing the facial invalida-

tion, nor as offering as-applied invalidation as an alternative ground for affirmance.

I do not agree with JUSTICE GINSBURG that what renders this statute immune from a facial challenge necessarily renders it immune from an as-applied challenge as well. A law that is formally merely a restriction upon access to information subjects no speaker to the risk of prosecution, and hence there is no need to protect such speakers by allowing someone else to raise their challenges to the law. But it is an entirely different question whether a restriction upon access that *allows* access to the press (which in effect makes the information part of the public domain), but at the same time *denies* access to persons who wish to use the information for certain speech purposes, is in reality a restriction upon speech rather than upon access to government information. That question—and the subsequent question whether, if it is a restriction upon speech, its application to this respondent is justified—is not addressed in the Court's opinion.

JUSTICE GINSBURG, with whom JUSTICE O'CONNOR, JUSTICE SOUTER, and JUSTICE BREYER join, concurring.

I join the Court's opinion, which recognizes that California Government Code § 6254(f)(3) is properly analyzed as a restriction on access to government information, not as a restriction on protected speech. See *ante*, at 40. That is sufficient reason to reverse the Ninth Circuit's judgment.

As the Court observes, see *ibid.*, the statute at issue does not restrict speakers from conveying information they already possess. Anyone who comes upon arrestee address information in the public domain is free to use that information as she sees fit. It is true, as JUSTICE SCALIA suggests, *ante* this page (concurring opinion), that the information could be provided to and published by journalists, and § 6254(f)(3) would indeed be a speech restriction if it then prohibited people from using that published information to speak to or about arrestees. But the statute contains no

such prohibition. Once address information is in the public domain, the statute does not restrict its use in any way.

California could, as the Court notes, constitutionally decide not to give out arrestee address information at all. See *ante*, at 40. It does not appear that the selective disclosure of address information that California has chosen instead impermissibly burdens speech. To be sure, the provision of address information is a kind of subsidy to people who wish to speak to or about arrestees, and once a State decides to make such a benefit available to the public, there are no doubt limits to its freedom to decide how that benefit will be distributed. California could not, for example, release address information only to those whose political views were in line with the party in power. Cf. *Board of Comm'rs, Wabaunsee Cty.* v. *Umbehr*, 518 U. S. 668 (1996) (local officials may not terminate an independent contractor for criticizing government policy). But if the award of the subsidy is not based on an illegitimate criterion such as viewpoint, California is free to support some speech without supporting other speech. See *Regan* v. *Taxation With Representation of Wash.*, 461 U. S. 540 (1983).

Throughout its argument, respondent assumes that § 6254(f)(3)'s regime of selective disclosure burdens speech in the sense of reducing the total flow of information. Whether that is correct is far from clear and depends on the point of comparison. If California were to publish the names and addresses of arrestees for everyone to use freely, it would indeed be easier to speak to and about arrestees than it is under the present system. But if States were required to choose between keeping proprietary information to themselves and making it available without limits, States might well choose the former option. In that event, disallowing selective disclosure would lead not to more speech overall but to more secrecy and less speech. As noted above, this consideration could not justify limited disclosures that discriminated on the basis of viewpoint or some other

proscribed criterion. But it does suggest that society's interest in the free flow of information might argue for upholding laws like the one at issue in this case rather than imposing an all-or-nothing regime under which "nothing" could be a State's easiest response.

JUSTICE STEVENS, with whom JUSTICE KENNEDY joins, dissenting.

The majority's characterization of this case as an improper facial challenge is misguided. Even a brief look at the complaint reveals that respondent unequivocally advanced both a facial and an "as applied" challenge to the constitutionality of California Government Code § 6254(f)(3) (hereinafter Amendment). In each of the six counts of its complaint, respondent explicitly challenged the Amendment on its face "and as applied." Complaint ¶¶ 29, 32, 35, 38, 41, 43. Respondent also alleged that it "will be and has already been injured in a serious way by the Amendment"; specifically, it claimed that it "has lost prospective clients and sales, and will ultimately be put out of business." *Id.*, ¶ 23. Finally, respondent has maintained before us that it continues to challenge the Amendment "on its face and as applied." Brief for Respondent 15.[1] It is, therefore, perfectly clear

---

[1] The majority suggests that respondent was denied the information simply because it "did not attempt to qualify" under the statute. *Ante*, at 40. This suggestion assumes that respondent's publication might qualify as "journalistic" even though it serves primarily as a mere conduit of data to prospective commercial users. The Amendment provides, however, that even a "journalistic" publication must sign, under risk of criminal prosecution for perjury, an affidavit stating that the information will "not be used directly or indirectly to sell a product or service to any individual or group of individuals." Cal. Govt. Code Ann. § 6254(f)(3) (West Supp. 1999). Not coincidentally, that is precisely how respondent uses the information. Accordingly, not only is the belief that respondent would have qualified under the statute unrealistic, but the notion that respondent must put itself at risk of 2-to-4 years' imprisonment in order to raise a constitutional challenge to a state statute is alarming, to say the least.

that respondent's allegations of direct injury justified the decision of the District Court and the Court of Appeals to pass on the validity of the Amendment.[2]

To determine whether the Amendment is valid as applied to respondent, it is similarly not necessary to invoke the overbreadth doctrine. That doctrine is only relevant if the challenger needs to rely on the possibility of invalid applications to third parties. In this case, it is the application of the Amendment to respondent itself that is at issue. Nor, in my opinion, is it necessary to do the four-step *Central Hudson* dance, because I agree with the majority that the Amendment is really a restriction on access to government information rather than a direct restriction on protected speech. For this reason, the majority is surely correct in observing that "California could decide not to give out arrestee information at all without violating the First Amendment." *Ante*, at 40. Moreover, I think it equally clear that California could release the information on a selective basis to a limited group of users who have a special, and legitimate, need for the information.

A different, and more difficult, question is presented when the State makes information generally available, but denies access to a small disfavored class. In this case, the State is making the information available to scholars, news media, politicians, and others, while denying access to a narrow category of persons solely because they intend to use the information for a constitutionally protected purpose. As

---

[2] The majority's characterization of both the lower court decisions as simple facial invalidations is perplexing. See *ante*, at 36–37. The District Court explicitly phrased the issue presented as whether "the amendment to Cal. Gov. Code § 6254 [is] an unconstitutional limitation on *plaintiff's* commercial speech." *United Reporting Publishing Corp.* v. *Lungren*, 946 F. Supp. 822, 824 (SD Cal. 1996) (emphasis added). Similarly, the Ninth Circuit concluded its opinion by stating that it need not reach respondent's "overbreadth arguments," *United Reporting Publishing Corp.* v. *California Highway Patrol*, 146 F. 3d 1133, 1140, n. 6 (1998), clearly indicating that it was not deciding the case as a facial challenge.

JUSTICE GINSBURG points out, if the State identified the disfavored persons based on their viewpoint, or political affiliation, for example, the discrimination would clearly be invalid. See *ante*, at 43 (concurring opinion).

What the State did here, in my opinion, is comparable to that obviously unconstitutional discrimination. In this case, the denial of access is based on the fact that respondent plans to publish the information to others who, in turn, intend to use it for a commercial speech purpose that the State finds objectionable. Respondent's proposed publication of the information is indisputably lawful—petitioner concedes that if respondent independently acquires the data, the First Amendment protects its right to communicate it to others. Brief for Petitioner 27; see also *Cox Broadcasting Corp.* v. *Cohn*, 420 U. S. 469, 496 (1975). Similarly, the First Amendment supports the third parties' use of it for commercial speech purposes. See *Shapero* v. *Kentucky Bar Assn.*, 486 U. S. 466, 472 (1988). Thus, because the State's discrimination is based on its desire to prevent the information from being used for constitutionally protected purposes, I think it must assume the burden of justifying its conduct.

The only justification advanced by the State is an asserted interest in protecting the privacy of victims and arrestees. Although that interest would explain a total ban on access, or a statute narrowly limiting access, it is insufficient when the data can be published in the news media and obtained by private investigators or others who meet the Amendment's vague criteria. This Amendment plainly suffers from the same "overall irrationality" that undermined the statutes at issue in *Rubin* v. *Coors Brewing Co.*, 514 U. S. 476, 488 (1995), and *Greater New Orleans Broadcasting Assn., Inc.* v. *United States*, 527 U. S. 173 (1999). By allowing such widespread access to the information, the State has eviscerated any rational basis for believing that the Amendment will truly protect the privacy of these persons. See *Cox Broadcasting Corp.*, 420 U. S., at 493–495.

A different, and more likely, rationale that might explain the restriction is the State's desire to prevent lawyers from soliciting law business from unrepresented defendants.[3] This interest is arguably consistent with trying to uphold the ethics of the legal profession. Also at stake here, however, are the important interests of allowing lawyers to engage in protected speech and potentially giving criminal defendants better access to needed professional assistance. See *Bates* v. *State Bar of Ariz.*, 433 U. S. 350, 376 (1977). Ultimately, this state interest must fail because at its core it relies on discrimination against disfavored speech.[4]

That the State might simply withhold the information from all persons does not insulate its actions from constitutional scrutiny. For even though government may withhold

---

[3] While there is no direct evidence that the State is acting with intended animus toward respondent and others' speech, see Brief for Petitioner 13, n. 5, we have expressly rejected the argument that "discriminatory . . . treatment is suspect under the First Amendment only when the legislature intends to suppress certain ideas," *Simon & Schuster, Inc.* v. *Members of N. Y. State Crime Victims Bd.*, 502 U. S. 105, 117 (1991).

[4] Our cases have repeatedly frowned on regulations that discriminate based on the content of the speech or the identity of the speaker. See, *e. g.*, *Greater New Orleans Broadcasting Assn., Inc.* v. *United States*, 527 U. S. 173, 190 (1999) (Government cannot restrict advertising for private casinos while allowing the advertising for tribal casinos); *Simon & Schuster, Inc.*, 502 U. S., at 116 (government cannot "singl[e] out income derived from expressive activity for a burden the State places on no other income"); *Arkansas Writers' Project, Inc.* v. *Ragland*, 481 U. S. 221, 229 (1987) (a tax that applies to some magazines but not to others "is particularly repugnant to First Amendment principles: a magazine's tax status depends entirely on its content" (emphasis deleted)); *Regan* v. *Time, Inc.*, 468 U. S. 641, 648–649 (1984) ("Regulations which permit the Government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment"); *Minneapolis Star & Tribune Co.* v. *Minnesota Comm'r of Revenue*, 460 U. S. 575, 582 (1983) (a tax that "single[s] out the press for special treatment" is unconstitutional); *Police Dept. of Chicago* v. *Mosley*, 408 U. S. 92, 96 (1972) ("[W]e have frequently condemned . . . discrimination among different users of the same medium for expression").

a particular benefit entirely, it "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially his interest in freedom of speech." *Perry* v. *Sindermann*, 408 U. S. 593, 597 (1972). A contrary view would impermissibly allow the government to " 'produce a result which [it] could not command directly.' " *Ibid.* It is perfectly clear that California could not directly censor the use of this information or the resulting speech. It follows, I believe, that the State's discriminatory ban on access to information—in an attempt to prohibit persons from exercising their constitutional rights to publish it in a truthful and accurate manner—is equally invalid.

Accordingly, I respectfully dissent.