# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-02-00332-CV

**Anderson Courier Service; ACC-A-FAX; Accident Review, Inc.; and Dr. Eric Randolph, Appellants**

**v.**

**The State of Texas; Greg Abbott,[1] in his official capacity as Attorney General for the State of Texas; and Ken Oden, in his official capacity as County Attorney for Travis County, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT NO. GN102836, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING**

### O P I N I O N

---

[1] We have substituted the current attorney general as the appropriate party. *See* **Tex. R. App. P. 7.2(a).**

In this case, we examine the constitutionality of House Bill 1544 (AH.B.1544@), which amended section 38 of the Texas Penal Code. The bill provides that a person commits a Class B misdemeanor if he uses certain accident report information obtained from the Texas Department of Public Safety or other governmental entity for pecuniary gain. Shortly after the bill was passed, Anderson Courier Service, ACC-A-FAX, Accident Review, Inc., and Dr. Eric Randolph **(collectively, AAnderson Courier@) brought suit claiming that H.B.1544 violates their rights to commercial free speech guaranteed by article I, section 8 of the Texas Constitution. Anderson Courier sought a temporary restraining order as well as temporary and permanent injunctions to have the law declared unconstitutional and enjoined from taking effect. The temporary restraining order was granted. At the hearing for the temporary injunction, the parties agreed to have the court rule on the merits of the case. The trial court denied all injunctive and declaratory relief. Anderson Courier appeals on the following grounds: (1) the trial court erroneously concluded that H.B.1544 regulated access to information rather than commercial free speech; and (2) the trial court incorrectly applied the constitutional test.[2]** We reverse the judgment of the trial court and render judgment that H.B.1544 unconstitutionally regulates commercial free speech.

## FACTUAL BACKGROUND

---

[2] At oral argument, the parties agreed that a third issue was moot. Therefore we will address only the first two issues.

**This appeal involves three private businesses that sell accident reports for purposes of solicitation and one chiropractor who relies on such reports to solicit clients. Anderson Courier Service obtains accident reports in bulk and sells them to a variety of companies who use the information for marketing purposes. ACC-A-FAX retrieves and faxes specific accident reports to insurance companies and attorneys who use the reports to investigate cases and claims. Accident Review is a private investigation company that conducts accident scene investigations for insurance companies. It obtains accident reports to aid in its investigations. Dr. Eric Randolph is a licensed chiropractor who uses accident reports as a means of soliciting business.**

**In 2001, the legislature passed H.B.1544,** which criminalized the means by which Anderson Courier and others make their living. Anderson Courier alleges that H.B.1544 violates its rights to commercial free speech guaranteed by the Texas Constitution. The provision of H.B.1544 challenged at trial and in this appeal provides in part: AA person commits an offense if: (1) the person obtains information . . . from the Department of Public Safety of the State of Texas or other governmental entity; and (2) the information is subsequently used for the direct solicitation of business or employment for pecuniary gain . . . .@ Act of May 22, 2001, 77th Leg., R.S., ch. 1032, ' 1, 2001 Tex. Gen. Laws 2281 (codified at Tex. Pen. Code Ann. ' 38.18 (West Supp. 2003)).

Anderson Courier sought a temporary restraining order, which was granted. Anderson Courier also sought a temporary and permanent injunctions to have the law declared unconstitutional and enjoined from taking effect. **The trial court denied Anderson Courier=s request for temporary and**

3

**permanent injunction and declaratory relief. The temporary restraining order expired and the law went into effect.**

## DISCUSSION

*Standard of Review*

In evaluating the constitutionality of a statute, the court must presume a statute enacted by the legislature is constitutional. *Nootsie, Ltd. v. Williamson County Appraisal Dist*., 925 S.W.2d 659, 662 (Tex. 1996); *Spring Branch Indep. Sch. Dist. v. Stamos*, **695 S.W.2d 556, 558 (Tex. 1985). The party seeking to invalidate the statute as unconstitutional bears the burden of demonstrating the statute fails to satisfy constitutional requirements.** *Enron Corp. v. Spring Indep. Sch. Dist*., **922 S.W.2d 931, 934 (Tex. 1996).**

**Where the trial court issues findings of fact and conclusions of law, we apply a sufficiency of the evidence review to the factual findings and review its conclusions of law** *de novo*. *Black v. City of Killeen*, 78 S.W.3d 686, 691 (Tex. App.CAustin 2002, pet. denied). There being no disputed facts, the trial court=s conclusion that H.B.1544 regulates access to information in the hands of the Texas Department of Public Safety and does not regulate commercial free speech is reviewed *de novo.*

*Commercial Free Speech*

**H.B.1544 is the result of the legislature=s ongoing desire to make public records accessible while protecting the privacy of individuals. Here, the State has an interest in**

protecting individuals who have been in an automobile accident from having personal information provided to the police used to subject them to commercial solicitation in their home. Previous legislative attempts to create a Aprivacy@exception to public records have been rejected by the courts as unconstitutional. *See Bailey v. Morales*, 190 F.3d 320, 326 (5th Cir. 1999) (holding unconstitutional complete prohibition on solicitation of accident victims by healthcare professionals); *Innovative Database Sys. v. Morales*, 990 F.2d 217, 222 (5th Cir. 1993) (holding complete prohibition on use of crime or accident reports for purpose of soliciting clients Atoo broad a means of effectuating the intended purpose of the law@).

The State contends, and the trial court found, that Anderson Courier=s commercial free speech rights were not implicated in this case because, rather than regulating commercial speech, the statute regulates Aaccess to information,@in a manner found to pass constitutional muster in *Los Angeles Police Department v. United Reporting Publishing Corp.*, 528 U.S. 32, 40 (1999). Conversely, Anderson Courier complains that the trial court erred in applying *United Reporting* to these facts. We agree.

The statute discussed in *United Reporting* places requirements on who, and under what circumstances, one may *obtain* government information in the possession of the California Department of Public Safety. 528 U.S. at 40. The Texas statute, on the other hand, provides open access to the information and then attempts to regulate how the holder can use the information once they have acquired it. Because we find that H.B.1544 attempts to regulate the

5

**use of the information legally obtained, we turn to Anderson Courier=s second issue involving**

**commercial free speech.**

**In determining whether a regulation of commercial speech survives First Amendment scrutiny, we look to the factors set forth in** *Central Hudson Gas & Electric Corp. v. Public Services Commission*, 447 U.S. 557 (1980).[3]  Under the *Central Hudson* test, if a state wishes to regulate truthful, non-deceptive speech relating to a commercial transaction, the state bears the burden of showing that:  (1) the state has a substantial interest in supporting the regulation; (2) the regulation directly and materially advances that interest; and (3) the regulation is narrowly tailored to advance that interest. *Id.* at 564-65.

To satisfy the first prong of *Central Hudson*, the State asserts three interests in regulating this activity:  (1) protection of the privacy of accident victims and their families from intrusion; (2) protection of accident victims and their families from the emotional stress occasioned by unwanted solicitation; and (3) protection of the integrity of legal and other professionals, licensed by the state, from unethical practices and loss of public confidence.  We accept this showing as one that satisfies the *Central Hudson* standard, since the Supreme Court has recognized each of these interests as being substantial.  *See Florida Bar v. Went*

---

[3] While the *Central Hudson* test arose from a commercial free speech challenge made under the First Amendment to the United States Constitution, the same test has been applied by this Court to a commercial free speech challenge brought under article I, section 8 of the Texas Constitution.  *See Amalgamated Acme Affiliates, Inc. v. Minton*, 33 S.W.3d 387, 394 (Tex. App.CAustin 2000, no pet.) (applying *Central Hudson* to commercial free speech challenge of temporary injunction ordering appellant to refrain from making certain representations to customers and advertisers of appellees); *State Bd. of Med. Exam=rs v. Burzynski*, 917 S.W.2d 365, 370 (Tex. App.CAustin 1996, writ denied) (applying *Central Hudson* to commercial free speech challenge of restriction on physician advertising).

*For It, Inc.* 515 U.S. 618, 624-25 (1995) (holding that privacy and maintaining ethical standards in state-licensed professions were substantial interests); *Edenfield v. Fane*, 507 U.S. 761, 770 (1993) **(holding that preventing fraud, maintaining ethical standards, and privacy were substantial interests).**

**Despite its substantial interests, the State must still satisfy the second and third prongs of *Central Hudson*. The State has the burden of showing that the regulation in question directly and materially advances the aforementioned interests. The Supreme Court has established that Amere speculation or conjecture@** will not satisfy that burden; Arather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.@ *Edenfield*, 507 U.S. at 770-71. **This standard may be met by A**reference to studies and anecdotes pertaining to different locales altogether . . . or even . . . based solely on history, consensus, and >simple common sense.=@ *Went For It*, 515 U.S. at 628.

Here, the State attempted to carry its burden **by producing a single witness who testified that he felt Avulnerable@ and Aangry@ after a person advertising body shop and chiropractic services contacted him within one week of his car accident. While this testimony helps establish the State=s interest in the regulation, it does not tell us how the regulation advances that interest. In addition, no data or empirical evidence was presented to support the contention that the majority of similarly situated individuals are negatively impacted in this way, nor was there evidence to show that the caller got the information about the witness=s identity and recent accident from an accident report.** It is only by implication that the state can establish that

H.B.1544 would eliminate this harm to the individual. By only producing a single witness with no data or empirical evidence, the State has failed to satisfy its burden of showing that H.B.1544 materially and directly advances its interests.

Finally, H.B.1544 also fails the third prong of the *Central Hudson* test because it is not narrowly drawn to advance the State=s interests. There must be a reasonable fit between the legislature=s ends and the means chosen to accomplish those ends. *Id.* at 632 (quoting *Board of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989)). **It does not have to be the single best disposition but one whose scope is in proportion to the interest served. It is** also not necessary to employ the least restrictive means, but the means chose must be narrowly tailored to achieve the desired objective. *Id*.

In evaluating the constitutionality of restrictions on commercial free speech, a key factor in the courts= analyses is the duration of the ban. Courts have generally upheld restrictions on commercial speech that have a reasonable time limit. *See, e.g.*, *id.* at 632-35; *Moore v. Morales*, 63 F.3d 358 , 363-64 (5th Cir. 1995). In both *Went For It* and *Moore*, the Supreme Court and the Fifth Circuit upheld laws that prohibited attorneys from using direct mail solicitation to contact potential clients within thirty days of an accident. Conversely, courts have generally found statutes that permanently ban the exercise of commercial free speech unconstitutional. *Bailey*, 190 F.3d at 326; *Innovative Data Sys.*, 990 F.2d at 222**;** ***see also Edenfield***, 507 U.S. at 763 (Florida ban on all in-person solicitation by certified public accountants violated First Amendment); *Revo v. Disciplinary Bd.,* 106 F.3d 929, 936 (10th Cir.1997) (rule of professional conduct banning all attorney direct mail advertisements to personal injury victims was overly broad in scope and duration); *State v. Bradford*, 787 So.2d 811, 814 (Fla. 2001) (Florida ban on

**8**

solicitation of motor vehicle tort claims by chiropractors and other professionals was not valid regulation of commercial speech).

In *Bailey*, a Texas statute that permanently prohibited the solicitation of patients by healthcare professionals was held unconstitutional. 190 F.3d at 326. Likewise, in *Innovative Data Systems*, a criminal statute prohibiting the use of public information to contact recent crime or accident victims was held unconstitutional. 990 F.2d at 222. In the case at bar, the State produced no explanation of why less-burdensome alternatives, such as *Went For It*=s thirty-day moratorium, were not considered. Because H.B.1544 is not limited to a particular type of solicitation nor is it restricted by a time limit, we conclude that it is neither reasonably tailored nor proportional to the harm the State seeks to prevent. Instead, the statute imposes a permanent ban on individuals who seek to conduct their business by using legally obtained information.

## CONCLUSION

The Texas legislature has attempted to protect accident victims from exploitation during a time when they may be most vulnerable. Article 1 of the Texas Constitution leaves room to place reasonable restrictions on this type of commercial solicitation. However, proof was not offered that the resulting statute, H.B.1544, directly advances the State=s interests, nor was it shown that it is narrowly tailored to accomplish the stated goals. We reverse the trial court=s judgment and render judgment that H.B.1544 unconstitutionally regulates commercial free speech.

David Puryear, Justice

Before Justices Yeakel, Patterson and Puryear

Reversed and Rendered

Filed:   March 6, 2003