TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-02-00332-CV






Anderson Courier Service; ACC-A-FAX; Accident Review, Inc.; and

Dr. Eric Randolph, Appellants


v.


The State of Texas; Greg Abbott, (1) in his official capacity as Attorney General

for the State of Texas; and Ken Oden, in his official capacity as

County Attorney for Travis County, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT

NO. GN102836, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING





O P I N I O N




 In this case, we examine the constitutionality of House Bill 1544 ("H.B.1544"), which
amended section 38 of the Texas Penal Code. The bill provides that a person commits a Class B
misdemeanor if he uses certain accident report information obtained from the Texas Department of
Public Safety or other governmental entity for pecuniary gain. Shortly after the bill was passed,
Anderson Courier Service, ACC-A-FAX, Accident Review, Inc., and Dr. Eric Randolph
(collectively, "Anderson Courier") brought suit claiming that H.B.1544 violates their rights to
commercial free speech guaranteed by article I, section 8 of the Texas Constitution. Anderson
Courier sought a temporary restraining order as well as temporary and permanent injunctions to have
the law declared unconstitutional and enjoined from taking effect. The temporary restraining order
was granted. At the hearing for the temporary injunction, the parties agreed to have the court rule
on the merits of the case. The trial court denied all injunctive and declaratory relief. Anderson
Courier appeals on the following grounds: (1) the trial court erroneously concluded that H.B.1544
regulated access to information rather than commercial free speech; and (2) the trial court incorrectly
applied the constitutional test. (2) We reverse the judgment of the trial court and render judgment that
H.B.1544 unconstitutionally regulates commercial free speech.


FACTUAL BACKGROUND


 This appeal involves three private businesses that sell accident reports for purposes
of solicitation and one chiropractor who relies on such reports to solicit clients. Anderson Courier
Service obtains accident reports in bulk and sells them to a variety of companies who use the
information for marketing purposes. ACC-A-FAX retrieves and faxes specific accident reports to
insurance companies and attorneys who use the reports to investigate cases and claims. Accident
Review is a private investigation company that conducts accident scene investigations for insurance
companies. It obtains accident reports to aid in its investigations. Dr. Eric Randolph is a licensed
chiropractor who uses accident reports as a means of soliciting business.

 In 2001, the legislature passed H.B.1544, which criminalized the means by which
Anderson Courier and others make their living. Anderson Courier alleges that H.B.1544 violates
its rights to commercial free speech guaranteed by the Texas Constitution. The provision of
H.B.1544 challenged at trial and in this appeal provides in part: "A person commits an offense if:
(1) the person obtains information . . . from the Department of Public Safety of the State of Texas
or other governmental entity; and (2) the information is subsequently used for the direct solicitation
of business or employment for pecuniary gain . . . ." Act of May 22, 2001, 77th Leg., R.S., ch. 1032,
§ 1, 2001 Tex. Gen. Laws 2281 (codified at Tex. Pen. Code Ann. § 38.18 (West Supp. 2003)).

 Anderson Courier sought a temporary restraining order, which was granted. 
Anderson Courier also sought a temporary and permanent injunctions to have the law declared
unconstitutional and enjoined from taking effect. The trial court denied Anderson Courier's request
for temporary and permanent injunction and declaratory relief. The temporary restraining order
expired and the law went into effect. 


DISCUSSION

Standard of Review

 In evaluating the constitutionality of a statute, the court must presume a statute
enacted by the legislature is constitutional. Nootsie, Ltd. v. Williamson County Appraisal Dist., 925
S.W.2d 659, 662 (Tex. 1996); Spring Branch Indep. Sch. Dist. v. Stamos, 695 S.W.2d 556, 558 (Tex.
1985). The party seeking to invalidate the statute as unconstitutional bears the burden of
demonstrating the statute fails to satisfy constitutional requirements. Enron Corp. v. Spring Indep.
Sch. Dist., 922 S.W.2d 931, 934 (Tex. 1996).

 Where the trial court issues findings of fact and conclusions of law, we apply a
sufficiency of the evidence review to the factual findings and review its conclusions of law de novo. 
Black v. City of Killeen, 78 S.W.3d 686, 691 (Tex. App.--Austin 2002, pet. denied). There being
no disputed facts, the trial court's conclusion that H.B.1544 regulates access to information in the
hands of the Texas Department of Public Safety and does not regulate commercial free speech is
reviewed de novo. 


Commercial Free Speech

 H.B.1544 is the result of the legislature's ongoing desire to make public records
accessible while protecting the privacy of individuals. Here, the State has an interest in protecting
individuals who have been in an automobile accident from having personal information provided
to the police used to subject them to commercial solicitation in their home. Previous legislative
attempts to create a "privacy" exception to public records have been rejected by the courts as
unconstitutional. See Bailey v. Morales, 190 F.3d 320, 326 (5th Cir. 1999) (holding unconstitutional
complete prohibition on solicitation of accident victims by healthcare professionals); Innovative
Database Sys. v. Morales, 990 F.2d 217, 222 (5th Cir. 1993) (holding complete prohibition on use
of crime or accident reports for purpose of soliciting clients "too broad a means of effectuating the
intended purpose of the law"). 

 The State contends, and the trial court found, that Anderson Courier's commercial
free speech rights were not implicated in this case because, rather than regulating commercial
speech, the statute regulates "access to information," in a manner found to pass constitutional muster
in Los Angeles Police Department v. United Reporting Publishing Corp., 528 U.S. 32, 40 (1999). 
Conversely, Anderson Courier complains that the trial court erred in applying United Reporting to
these facts. We agree. 

 The statute discussed in United Reporting places requirements on who, and under
what circumstances, one may obtain government information in the possession of the California
Department of Public Safety. 528 U.S. at 40. The Texas statute, on the other hand, provides open
access to the information and then attempts to regulate how the holder can use the information once
they have acquired it. Because we find that H.B.1544 attempts to regulate the use of the information
legally obtained, we turn to Anderson Courier's second issue involving commercial free speech. 

 In determining whether a regulation of commercial speech survives First Amendment
scrutiny, we look to the factors set forth in Central Hudson Gas & Electric Corp. v. Public Services
Commission, 447 U.S. 557 (1980). (3) Under the Central Hudson test, if a state wishes to regulate
truthful, non-deceptive speech relating to a commercial transaction, the state bears the burden of
showing that: (1) the state has a substantial interest in supporting the regulation; (2) the regulation
directly and materially advances that interest; and (3) the regulation is narrowly tailored to advance
that interest. Id. at 564-65.

 To satisfy the first prong of Central Hudson, the State asserts three interests in
regulating this activity: (1) protection of the privacy of accident victims and their families from
intrusion; (2) protection of accident victims and their families from the emotional stress occasioned
by unwanted solicitation; and (3) protection of the integrity of legal and other professionals, licensed
by the state, from unethical practices and loss of public confidence. We accept this showing as one
that satisfies the Central Hudson standard, since the Supreme Court has recognized each of these
interests as being substantial. See Florida Bar v. Went For It, Inc. 515 U.S. 618, 624-25 (1995)
(holding that privacy and maintaining ethical standards in state-licensed professions were substantial
interests); Edenfield v. Fane, 507 U.S. 761, 770 (1993) (holding that preventing fraud, maintaining
ethical standards, and privacy were substantial interests).

 Despite its substantial interests, the State must still satisfy the second and third prongs
of Central Hudson. The State has the burden of showing that the regulation in question directly and
materially advances the aforementioned interests. The Supreme Court has established that "mere
speculation or conjecture" will not satisfy that burden; "rather, a governmental body seeking to
sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that
its restriction will in fact alleviate them to a material degree." Edenfield, 507 U.S. at 770-71. This
standard may be met by "reference to studies and anecdotes pertaining to different locales altogether
. . . or even . . . based solely on history, consensus, and 'simple common sense.'" Went For It, 515
U.S. at 628.

 Here, the State attempted to carry its burden by producing a single witness who
testified that he felt "vulnerable" and "angry" after a person advertising body shop and chiropractic
services contacted him within one week of his car accident. While this testimony helps establish the
State's interest in the regulation, it does not tell us how the regulation advances that interest. In
addition, no data or empirical evidence was presented to support the contention that the majority of
similarly situated individuals are negatively impacted in this way, nor was there evidence to show
that the caller got the information about the witness's identity and recent accident from an accident
report. It is only by implication that the state can establish that H.B.1544 would eliminate this harm
to the individual. By only producing a single witness with no data or empirical evidence, the State
has failed to satisfy its burden of showing that H.B.1544 materially and directly advances its
interests.

 Finally, H.B.1544 also fails the third prong of the Central Hudson test because it is
not narrowly drawn to advance the State's interests. There must be a reasonable fit between the
legislature's ends and the means chosen to accomplish those ends. Id. at 632 (quoting Board of Trs.
of State Univ. of N.Y. v. Fox, 492 U.S. 469, 480 (1989)). It does not have to be the single best
disposition but one whose scope is in proportion to the interest served. It is also not necessary to
employ the least restrictive means, but the means chose must be narrowly tailored to achieve the
desired objective. Id.

 In evaluating the constitutionality of restrictions on commercial free speech, a key
factor in the courts' analyses is the duration of the ban. Courts have generally upheld restrictions
on commercial speech that have a reasonable time limit. See, e.g., id. at 632-35; Moore v. Morales,
63 F.3d 358 , 363-64 (5th Cir. 1995). In both Went For It and Moore, the Supreme Court and the
Fifth Circuit upheld laws that prohibited attorneys from using direct mail solicitation to contact
potential clients within thirty days of an accident. Conversely, courts have generally found statutes
that permanently ban the exercise of commercial free speech unconstitutional. Bailey, 190 F.3d at
326; Innovative Data Sys., 990 F.2d at 222; see also Edenfield, 507 U.S. at 763 (Florida ban on all
in-person solicitation by certified public accountants violated First Amendment); Revo v.
Disciplinary Bd., 106 F.3d 929, 936 (10th Cir.1997) (rule of professional conduct banning all
attorney direct mail advertisements to personal injury victims was overly broad in scope and
duration); State v. Bradford, 787 So.2d 811, 814 (Fla. 2001) (Florida ban on solicitation of motor
vehicle tort claims by chiropractors and other professionals was not valid regulation of commercial
speech).

 In Bailey, a Texas statute that permanently prohibited the solicitation of patients by
healthcare professionals was held unconstitutional. 190 F.3d at 326. Likewise, in Innovative Data
Systems, a criminal statute prohibiting the use of public information to contact recent crime or
accident victims was held unconstitutional. 990 F.2d at 222. In the case at bar, the State produced
no explanation of why less-burdensome alternatives, such as Went For It's thirty-day moratorium,
were not considered. Because H.B.1544 is not limited to a particular type of solicitation nor is it
restricted by a time limit, we conclude that it is neither reasonably tailored nor proportional to the
harm the State seeks to prevent. Instead, the statute imposes a permanent ban on individuals who
seek to conduct their business by using legally obtained information. 


CONCLUSION

 The Texas legislature has attempted to protect accident victims from exploitation
during a time when they may be most vulnerable. Article 1 of the Texas Constitution leaves room
to place reasonable restrictions on this type of commercial solicitation. However, proof was not
offered that the resulting statute, H.B.1544, directly advances the State's interests, nor was it shown
that it is narrowly tailored to accomplish the stated goals. We reverse the trial court's judgment and
render judgment that H.B.1544 unconstitutionally regulates commercial free speech. 



 

 David Puryear, Justice 

Before Justices Yeakel, Patterson and Puryear

Reversed and Rendered

Filed: March 6, 2003

1. We have substituted the current attorney general as the appropriate party. See Tex. R. App.
P. 7.2(a).
2. At oral argument, the parties agreed that a third issue was moot. Therefore we will address
only the first two issues.
3. While the Central Hudson test arose from a commercial free speech challenge made under
the First Amendment to the United States Constitution, the same test has been applied by this Court
to a commercial free speech challenge brought under article I, section 8 of the Texas Constitution. 
See Amalgamated Acme Affiliates, Inc. v. Minton, 33 S.W.3d 387, 394 (Tex. App.--Austin 2000,
no pet.) (applying Central Hudson to commercial free speech challenge of temporary injunction
ordering appellant to refrain from making certain representations to customers and advertisers of
appellees); State Bd. of Med. Exam'rs v. Burzynski, 917 S.W.2d 365, 370 (Tex. App.--Austin 1996,
writ denied) (applying Central Hudson to commercial free speech challenge of restriction on
physician advertising).