# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00269-CV

---

**Angelwylde HOA, Inc. and Angelwylde Place Homeowners Association, Inc., Appellants**

**v.**

**Emily Fournier, David Fournier, Thomas Nelms, and Susan Nelms, Appellees**

---

### FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. C-1-CV-20-005619, THE HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

This is a dispute over amendments to deed restrictions that impose a minimum duration on leases of residences in two subdivisions. Angelwylde HOA, Inc. and Angelwylde Place Homeowners Association, Inc. (collectively, HOAs) appeal from the trial court's judgment that the amendments are unenforceable against appellees Emily Fournier, David Fournier, Thomas Nelms, and Susan Nelms (collectively, "Homeowners"). We reverse in part and remand in part.

### BACKGROUND[1]

In 2004, Thomas and Susan Nelms bought a home in the Angelwylde subdivision. The Nelmses' property is subject to the Angelwylde Convenants, Conditions, and Restrictions

---

[1] We draw the background section of this opinion from the agreed statement of facts signed by the parties. *See* Tex. R. Civ. P. 263 (providing for trial upon agreed statement of facts).

(Angelwylde Convenants), dated June 16, 1995, and filed with the real property records of Travis County. At the time the Nelmses purchased their property, the Angelwylde Convenants provided in part:

> Co-Declarants do hereby declare that the real property described in Section 1.02, hereof, is and shall be held, transferred, sold, conveyed, and occupied subject to the covenants, conditions, restrictions, charges and liens hereinafter set forth[.]
>
> . . .
>
> **RESIDENTIAL RESTRICTIONS**
>
> 4.01 Residential Use. Except as otherwise expressly provided for herein all Lots shall be improved and used for single-family residential use, inclusive of such other Improvements as are necessary or customarily incident to residential use. Single-family residential use as defined herein shall include immediate family members, siblings, cousins, parents, grandparents, great grandparents, and domestic employees.
>
> . . . .
>
> 4.08 Rentals. Nothing in this Declaration shall prevent the rental of any Lot and the Improvements thereon by the Owner thereof for residential purposes only. Within ten (10) days after the execution of a lease for rental of any Lot and the Improvements thereon, the Owner shall give written notice thereof to the Board, which notice shall set forth the name(s) of the tenant(s) and the length of time the lease is in effect. All lease agreements shall be in writing and shall provide that the terms of such lease shall be subject in all respects to the provisions of the Declaration, Bylaws and Association Rules, as then existing and as may be amended or modified thereafter[.]

In October of 2013, the Fourniers purchased a lot in Angelwylde Place and moved into their new home there in March 2016. The Fourniers' property is subject to the "Declaration of Covenants, Conditions and Restrictions for the Resubdivision of Lot 9, Block A, Angelwylde Section 3" ("Angelwylde Place Declaration") dated December 10, 2010, and filed in the real property records of Travis County. At the time the Fourniers purchased their property, the

Angelwylde Place Declaration contained materially identical provisions to the Angelwylde Covenants.

The Fourniers and the Nelmses rented out their properties for terms of thirty days or less when not using the residences themselves. In 2020, the members of each HOA voted to amend the governing document to restrict rentals. The amended provision of the Angelwylde Covenants states:

> Nothing in this Declaration shall prevent the rental of any Lot and the Improvements thereon by the Owner thereof for residential purposes only, *provided that (a) the minimum lease term shall be 12 months, and (b) no Lot or portion thereof shall be leased or used (i) for hotel, transient or vacation rental (similar to AirBnb or VRBO) purposes or (ii) in a manner that would be subject to payment of hotel tax under applicable law.*
>
> . . . .
>
> *No Lot or portion thereof shall be advertised at daily or weekly rental rates or for a lease term of less than 12 months.*

(emphases added). The members of the Angelwylde Place Homeowners Association adopted a materially identical amendment to the Angelwylde Place Declaration (collectively, 2022 Amendments).

The Fourniers and Nelmses sued, seeking a declaration that the 2022 Amendments are unenforceable as to them. *See* Tex. Civ. Prac. & Rem. Code § 37.004(a). The parties agreed to a bench trial on stipulated facts, including the amount of each side's reasonable and necessary attorney's fees and contingent appellate fees. *See* Tex. R. Civ. P. 263 (providing for trial on stipulated facts). After considering the filed stipulations and joint exhibits, the trial court rendered judgment in favor of the Homeowners. The final judgment provides that the Homeowners are each entitled to a declaration that the 2020 Amendments are unenforceable

"owing to their settled property rights" under the declarations, "under which they purchased their property without restrictions on leasing" except for notice provisions not relevant here.[2] The trial court stated that each amendment "represents a new and different restriction which defies the reasonable expectations" of the owners. Separately, the trial court determined that the restrictions on advertising are "void as against public policy." Consistent with the stipulations, the trial court awarded the Homeowners $12,500 in attorneys' fees and contingent appellate fees. This appeal ensued.

## STANDARD OF REVIEW

In an appeal involving an agreed statement of facts pursuant to Rule 263, the "agreed facts are binding on the parties, the trial court, and the appellate court." *Patton v. Porterfield*, 411 S.W.3d 147, 153 (Tex. App.—Dallas 2013, pet. denied). The "only issue on appeal is whether the trial court properly applied the law to the agreed facts." *Poole Point Subdivision Homeowners' Ass'n v. DeGon*, No. 03-20-00618-CV, 2022 WL 869809, at *2 (Tex. App.—Austin Mar. 24, 2022, pet. denied) (mem. op.) (citing *Abbott v. Blue Cross & Blue Shield of Tex., Inc.*, 113 S.W.3d 753, 757 (Tex. App.—Austin 2003, pet. denied)). We review this issue de novo. *Id.*

## DISCUSSION

The HOAs argue in three issues that the trial court erred by concluding that the 2022 Amendments are unenforceable as to the Homeowners.

---

[2] The trial court also rendered an agreed judgment against the Homeowners for violating requirements that they provide the property owners' association written notice of the leases. That portion of the judgment is not at issue here.

4

To amend deed restrictions, three conditions must be met. *Roddy v. Holly Lake Ranch Ass'n*, 589 S.W.3d 336, 342 (Tex. App.—Tyler 2019, no pet.). First, either "the instrument creating the original restrictions must establish both the right to amend and the method of amendment" or the amendments must have been adopted through a statutory procedure. *See Poole Point*, 2022 WL 869809, at *3. "Second, the right to amend implies only those changes contemplating a correction, improvement, or reformation of the agreement rather than its complete destruction." *Id.* (citing *Wilchester W. Concerned Homeowners LDEF, Inc. v. Wilchester W. Fund, Inc.*, 177 S.W.3d 552, 562 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Dyegard Land P'ship v. Hoover*, 39 S.W.3d 300, 313 (Tex. App.—Fort Worth 2001, no pet.)). Finally, "the amendment must not be illegal or against public policy." *Id.*

**Right to Lease**

The HOAs argue in their first two issues that the 2022 Amendments do not effectively destroy the right to lease originally granted in the declarations. This Court addressed a similar question in *Poole Point v. DeGon*. In that case, the governing declaration expressly allowed property owners to lease their residences subject to the declaration's other provisions. *Id.* at *1. The DeGons began leasing their residence for periods of fewer than thirty days, and the homeowners' association amended the declaration to prohibit rentals for fewer than 180 days. *Id.* at *2. The DeGons sued for a declaration that the amendment could not be enforced against them. *Id.* The trial court ruled that the restriction was unenforceable because it "represents a new and different restriction which defies the reasonable and settled expectations of the DeGons, who relied on the 1987 Declaration's grant of the right to lease the main dwelling without duration restriction and physical occupancy requirements." *Id.*

5

This Court rejected the lower court's reasoning, explaining that the DeGons purchased their residence "knowing that the [declaration] could be amended and that the right to lease was 'subject to all provisions' in the Restrictions, including any valid amendments. For this reason, the DeGons could not reasonably have expected that there could never be restrictions placed on the right to lease their residence." *Id.* at *3 n.1. The real issue was whether the amendment destroyed the right to lease originally granted and whether the restriction was illegal or against public policy. *Id.* at *3.

The Homeowners argue that we should not follow this approach, which they term the "pure-contract approach." In other words, they urge that we should not treat restrictive covenants purely as contracts. Generally, "[r]estrictive covenants are contracts that run with the land and are subject to the general rules of contract construction." *JBrice Holdings, L.L.C. v. Wilcrest Walk Townhomes Ass'n*, 644 S.W.3d 179, 183 (Tex. 2022) (footnote and quotation marks omitted). When buyers purchase property governed by a declaration capable of amendment, they are on notice that "the unique form of ownership they acquired when they purchased their [property] was subject to change through the amendment process, and that they would be bound by properly adopted amendments." *Adlong v. Twin Shores Prop. Owners Ass'n*, No. 09-21-00166-CV, 2022 WL 869801, at *9 (Tex. App.—Beaumont Mar. 24, 2022, pet. denied) (mem. op.). The Homeowners respond that Texas buyers do not have a meaningful choice to purchase property governed by a declaration that is not subject to amendment. For example, Section 209.0041 of the Property Code provides that the declaration of a property owners' association "may be amended only by a vote of 67 percent of the total votes allocated to property owners entitled to vote on the amendment of the declaration." Tex. Prop. Code § 209.0041(h). With few exceptions, Section 209.0041 applies to a dedicatory instrument

regardless of when it was created and supersedes any contrary requirement in a dedicatory instrument. *See id.* § 209.0041(e), (f). Even if most property declarations are subject to amendment, it does not change their status as "contracts that run with the land." *See JBrice Holdings*, 644 S.W.3d at 183; *accord Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 280 (Tex. 2018) ("[T]he courts have always treated unambiguous covenants as valid contracts between individuals." (internal quotation marks omitted)). Nor does it change the fact that when the Homeowners purchased their homes, they were aware the governing declaration was subject to amendment. Thus, we will continue to apply the same three-pronged approach we applied in *Poole Point*.

This Court held in *Poole Point* that an amendment that imposed a 180-day minimum duration on leases and required that the lessee occupy the property did not destroy the right to lease because the declaration did

> not grant homeowners an absolute or unlimited right to lease their residences. Instead, that right is "subject to all the provisions of" the Restrictions, which contain a provision permitting amendments. The Amendment, which was validly executed and recorded, does not completely prohibit the owners' ability to lease their residences. Rather, it imposes a minimum stay provision, establishing the minimum duration for a lease of a property owner's residence. . . . The placing of certain conditions on the duration of a lease and the lessee's use of the leased property does not constitute "complete destruction" of the Deed Restrictions. The Amendment reformed the right to lease contained in the Restrictions by setting a minimum duration for any leases and requiring that the lessees use the leased property as their residence for the duration of the lease. Thus, unless the Amendment is illegal or against public policy, it constitutes an enforceable limitation on the right to lease the Property.

*Poole Point*, 2022 WL 869809, at *3 (internal citation omitted).

Similarly, neither the Angelwylde Convenants nor the Angelwylde Place Decalaration granted homeowners an absolute right to lease their residences. Rather, both

7

expressly state that any conveyance of the land is subject to the "covenants, conditions, restrictions, [and] charges" laid out in the declaration. The Angelwylde Place Declaration contains a provision permitting amendments, but the Angelwylde Covenants does not; the amendment was enacted pursuant to Section 209.0041 of the Property Code. However, the Homeowners do not dispute that they "had notice when they purchased their homes that their deed restrictions could be amended." Instead, they contend that they were unaware that an amendment could "operate retroactively to deprive them of rights they already purchased." But that is another way of saying that they expected to be bound only by valid amendments, i.e., ones that correct, improve, or reform an existing provision rather than causing its "complete destruction." *See id.* We conclude that the Homeowners could not "reasonably have expected that there could never be restrictions placed on the right to lease their residence." *See id.* at *3 n.1.

Turning to the question of whether the 2020 Amendments effectively destroy the right to lease, we concluded in *Poole Point* that an amendment setting a 180-day minimum duration on leases and requiring that the lessee reside at the property did not completely destroy the right to lease set out in the declaration. *See id.* at *3 ("The placing of certain conditions on the duration of a lease and the lessee's use of the leased property does not constitute 'complete destruction' of the Deed Restrictions."). Our sister court has similarly concluded that an amendment placing a six-month minimum duration on leases did not effectively "forbid all rentals" on the property. *See Adlong*, 2022 WL 869801, at *12. Guided by these authorities, we conclude that the 2022 Amendments constitute an enforceable limitation on the right to use the properties unless they are illegal or against public policy. *See Poole Point*, 2022 WL 869809, at *3; *Adlong*, 2022 WL 869801, at *12; *Cavazos v. Board. of Governors of Council of Co-Owners*

8

*of Summit Condos.*, No. 13-12-00524-CV, 2013 WL 5305237, at *3 (Tex. App.—Corpus Christi–Edinburg Sept. 19, 2013, no pet.) (mem. op.) (concluding similar minimum-stay provision did not destroy right to lease).

Regarding legality, we explained in *Poole Point*:

> Modifications to deed restrictions that impose greater restrictions are not prohibited by law when they are consistent with the overall plan of development. . . . The Restrictions for the Poole Point Subdivision indicate the intent that it be a residential community. . . . "[R]estrictions placed upon lots for the purpose of prescribing and preserving the residential character thereof are looked upon with favor by the courts." *Wald v. West MacGregor Protective Ass'n*, 332 S.W.2d 338, 343 (Tex. App.—Houston 1960, writ ref'd n.r.e.). The minimum duration requirement created by the Amendment reinforced the existing residential use and occupancy restriction and the prohibition against commercial activities. Furthermore, the Texas Supreme Court has indicated that amending deed restrictions is an appropriate method for specifying a minimum duration for leases in a residential subdivision. *See Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 277 (Tex. 2018). . . . If such amendments were illegal or against public policy, the supreme court would not have described them as an available option.

2022 WL 869809, at *4 (some internal citations omitted).

Here, both dedicatory instruments specifically state that each subdivision is intended to be a residential community. Like the amendment at issue in *Poole Point*, the 2020 Amendments reinforced the existing residential use restriction and the prohibition against commercial activities. Furthermore, the supreme court has indicated that amending deed restrictions is an appropriate method for specifying a minimum duration for leases in a residential subdivision. *See Tarr*, 556 S.W.3d at 277. The issue in *Tarr* was "whether short-term vacation rentals violated restrictive covenants that limited tracts to residential purposes and single-family residences." *Id.* at 276. Although declining to construe the covenants as prohibiting short-term leases, the supreme court noted that "throughout the dispute, neither the

association nor Tarr attempted to amend the deed restrictions to specify a minimum duration for leasing—an option available to both of them under the deed's amendment provisions." *Id*. at 277. "If such amendments were illegal or against public policy, the supreme court would not have described them as an available option." *See Poole Point*, 2022 WL 869809, at *4.

We conclude that the 2020 Amendments are valid and enforceable because they meet the requirements of (1) correcting, reforming, or improving the dedicatory instruments rather than destroying them, and (2) are not illegal or against public policy. *See Chu v. Windermere Lakes Homeowners Ass'n*, 652 S.W.3d 899, 905 (Tex. App.—Houston [14th Dist.] 2022, pet. filed) (upholding 180-day minimum restriction); *Poole Point*, 2022 WL 869809, at *4 (same); *Adlong*, 2022 WL 869801, at *12 (upholding six-month minimum on lease). We sustain the HOAs' first two issues.

**Restrictions on Advertising**

We separately consider the limitations on advertising in the 2020 Amendment. The HOAs argue in their third issue that the trial court erred by invalidating the restriction on public policy grounds because it does not contravene Section 209.016 of the Property Code. *See* Tex. Prop. Code § 209.016(b)–(c) (pertaining to certain restrictions on leasing in dedicatory instruments). The Homeowners argued in the trial court that it is void because "[a] flat-out denial of commercial speech rises to the level of a constitutional infirmity" and they make the same argument on appeal.

Section 209.016 prohibits the adoption or enforcement of a deed restriction requiring "a lease or rental applicant or a tenant to be submitted to and approved for tenancy by the property owners' association" or requiring the submission of certain information about the

10

applicant. *Id.* § 209.016(b)–(c). However, Section 209.016 "shall not be construed to prohibit the adoption or enforcement of a provision in a dedicatory instrument establishing a restriction relating to occupancy or leasing." *Id.* § 209.016(d). The HOAs argue that if the legislature had intended to prohibit the adoption of other restrictions "relating to occupancy or leasing" it would have said so. In effect, they argue that any restriction not prohibited by Section 209.016(d) (and which does not violate state or federal laws against housing discrimination) complies with public policy.

We agree that the restriction on advertising does not contravene public policy. "Courts should refrain from nullifying a transaction because it is contrary to public policy, unless the transaction contravenes some positive statute or some well-established rule of law." *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 338 (Tex. 2020) (internal quotation marks omitted). The Homeowners argued that the restriction on advertising regulated commercial speech that is protected by the First Amendment. *See Anderson Courier Serv. v. State*, 104 S.W.3d 121, 124 (Tex. App.—Austin 2003, pet. denied) (applying test for regulation of commercial speech set out in *Central Hudson Gas & Electric Corporation v. Public Service Commission of New York*, 447 U.S. 557, 564–65 (1980)). The First Amendment, however, constrains state action and not private conduct. *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). Because the HOAs are private corporations, we conclude that the record does not support the trial court's implicit conclusion that the 2020 Amendments constitute state action that implicate First Amendment protections. *See Adlong*, 2022 WL 869801, at *12 (concluding that plaintiffs had not established adoption of similar provision by property owners' association was state action); *Park v. Escalera Ranch Owners' Ass'n,*, 457 S.W.3d 571, 590 n.9 (Tex. App.—Austin 2015, no pet.) (same conclusion

11

with respect to due process claim against association). We conclude that the district court erred by declaring the restriction void as against public policy and sustain the HOAs' third issue.

**Attorneys' Fees**

The Homeowners argue that we must affirm the award of attorneys' fees because the HOAs failed to attack it on appeal. *See* Tex. R. App. P. 33.1(i) (appellant's "brief must contain a succinct, clear, and accurate statement of the arguments made in the body of the brief"). The trial court awarded the Homeowners attorneys' fees as well as conditional appellate fees under the Uniform Declaratory Judgment Act. *See* Tex. Civ. Prac. & Rem. Code § 37.009 ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."). Although the HOAs did not challenge the award in a separate issue, they challenged the propriety of the declaratory judgment. Whether a party prevailed is a substantial factor in determining whether an award is equitable and just. *See, e.g.*, *Bailey v. Smith*, 581 S.W.3d 374, 399 (Tex. App.—Austin 2019, pet. denied) ("[A] court 'is well within its discretion to deny or award attorney's fees based on the outcome of the case.'" (quoting *Brazoria County v. Texas Comm'n on Env't Quality*, 128 S.W.3d 728, 744 (Tex. App.—Austin 2004, no pet.))). Under these circumstances, we conclude that the HOAs' challenge to the propriety of the judgment necessarily included a challenge to the fee award. *See* Tex. R. App. P. 38.1(f) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included."); *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018) ("Constitutional imperatives favor the determination of cases on their merits[.]"). Rather than render judgment awarding fees as the HOAs request, we will remand the issue to the trial court to determine whether the award is still equitable and just. *See*

12

*Morath v. Texas Taxpayer & Student Fairness Coal.*, 490 S.W.3d 826, 885 (Tex. 2016) ("Where the extent to which a party prevailed has changed on appeal, our practice has been to remand the issue of attorney fees to the trial court for reconsideration of what is equitable and just."); *HMT Tank Serv. LLC v. American Tank & Vessel, Inc.*, 565 S.W.3d 799, 813–14 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (remanding for trial court to reconsider whether award was equitable and just given changed circumstances).

## CONCLUSION

We reverse the trial court's judgment and render judgment declaring that the 2022 Amendments are enforceable against the Homeowners. We remand the issue of attorneys' fees for further proceedings.

_____

Edward Smith, Justice

Before Justices Baker, Smith, and Theofanis

Reversed and Rendered in Part; Reversed and Remanded in Part

Filed: March 17, 2023

13