DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Nicole S. ("Mother"), appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated her *Page 2 
parental rights to her two minor children and placed them in the permanent custody of Lorain County Children Services ("LCCS"). This Court affirms.
 I. {¶ 2} Mother is the natural mother of R.S., born March 8, 2002, and J.S., born July 1, 2003.[1] The children's father did not participate in the permanent custody hearing and is not a party to this appeal. LCCS filed a complaint on October 8, 2004, alleging that R.S. and J.S. were neglected and dependent children. The children were placed in the temporary custody of their maternal grandmother, where they were already residing pursuant to a voluntary safety plan. The juvenile court adjudicated the children neglected and dependent on December 29, 2004.
 {¶ 3} R.S. and J. S. continued to reside with their grandmother for the next several months, but were later removed from her custody because the grandmother started a fire in her basement. The grandmother's erratic behavior apparently stemmed from untreated mental health issues and it was also discovered that she *Page 3 
was terminally ill. The children were placed briefly with a maternal uncle and then placed in foster care.
 {¶ 4} On May 11, 2006, LCCS moved for permanent custody of both children. Following a hearing, the trial court found that the children could not be placed with either parent within a reasonable time and should not be placed with them and that permanent custody was in their best interests. Consequently, the trial court terminated parental rights and placed the children in the permanent custody of LCCS. Mother appeals and raises three assignments of error.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT TERMINATED THE PARENTAL RIGHTS OF [MOTHER] AND GRANTED PERMANENT CUSTODY OF THE MINOR CHILDREN TO [LCCS]."
 {¶ 5} Mother contends that the trial court erred in terminating her parental rights and placing her two children in the permanent custody of LCCS. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is *Page 4 
in the best interest of the child, based on an analysis under R.C.2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also,In re William S. (1996), 75 Ohio St.3d 95, 99.
 {¶ 6} The trial court found that the first prong of the permanent custody test was satisfied because J.S. and R.S. could not be placed with either parent within a reasonable time or should not be placed with either parent. See R.C. 2151.414(E). R.C. 2151.414(E)(1) requires the court to find that the children cannot be placed with either parent if it determines, by clear and convincing evidence, that "the parent has failed continuously and repeatedly to substantially remedy" the conditions that led to the children's placement outside the home.
 {¶ 7} The evidence before the trial court demonstrated that the children were removed from Mother's home due to concerns that included the mental health of both parents; the fact that J.S., who had developmental delays, had not been receiving the therapy and medical attention that he needed; and the instability of the children's living environment because Mother lacked stable housing and sufficient stable income. Consequently, the primary goals of Mother's case plan were for her to undergo a psychological assessment and follow any recommended course of treatment, become involved in the ongoing therapy of her children, secure stable employment, and secure stable housing. During the next two years, however, Mother made little progress toward achieving any of these goals.
 {¶ 8} The evidence demonstrated that R. S. was involved in speech therapy and J.S. was receiving physical therapy, but Mother had not been involved in *Page 5 
either child's therapy. At the time LCCS became involved with this family, J.S. in particular had significant developmental delays. In addition to his developmental delays, J.S. had also been diagnosed with environmental failure to thrive, yet Mother did not seem to appreciate the severity of either of his diagnoses. J.S. had been making progress after removal from the home because he had been receiving regular medical care and attending regular appointments with several therapists. According to his physical therapist, J.S. was "flourishing." The physical therapist had called Mother and tried to involve her in the therapy and exercises that J.S. needed, but Mother did not seem to be concerned about J.S.'s situation and never came to any appointments, nor did she ever call to inquire about his progress.
 {¶ 9} Mother testified that she did not visit the children or come to J.S.'s therapy appointments because she had to work and had other things to do after work. Her purported justifications for missing the visits and appointments were contradicted by other evidence, however, and she later admitted that she did not even know when the physical therapy appointments were.
 {¶ 10} Mother did attend some counseling sessions to address her own mental health issues, but never completed a treatment program during the two years prior to the hearing. She had also failed to secure stable housing during that time. At the time of the permanent custody hearing, Mother was living in the home of her deceased mother and it was in the midst of a foreclosure action. Mother was not aware that she was about to lose the home to foreclosure until the caseworker told her. Although the caseworker gave her information about the *Page 6 
foreclosure action, Mother had done nothing to involve herself in the action or secure any interest in the property. She testified at the hearing that she can always find somewhere else to live.
 {¶ 11} Mother's employment was not stable or sufficient to support her children. Although she claimed to work six days a week, she averaged only 15 to 20 total hours of work per week. She apparently had begun babysitting each day for the child of her current boyfriend, but it was unclear how long that would continue or how much money she was making. Other than her own testimony, Mother offered no proof of any of her employment or income.
 {¶ 12} The evidence clearly established that, during the two years prior to the hearing, Mother had failed to substantially remedy the conditions that had led to her children's removal from the home. The trial court's finding that the children should not be placed with her for that reason was fully supported by the evidence.
 {¶ 13} After the trial court found that the children could not be placed with either parent due to one or more of the factors under R.C.2151.414(E), it was required to determine whether permanent custody was in the best interests of the children. When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; *Page 7 
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C. 2151.414(D)(1)-(4).[2]
 {¶ 14} During the 26 months following the removal of the children from the home, Mother's interaction and interrelationship with them had been limited to visitations. Mother frequently missed visits and, because she often did not notify the agency ahead of time, the children would be waiting for her when she failed to show. During the five months prior to the hearing, Mother did not visit her children once and she made only one phone call to them during that long period.
 {¶ 15} Mother had told the caseworker that she had difficulty making the visits due to her work schedule and lack of transportation, so the caseworker had attempted to accommodate her by being flexible with the visitation schedule and offering Mother bus passes, but Mother still missed many visits. The evidence further demonstrated that Mother worked only part time and was able to find the time to do other things during the workday, including regularly babysitting the child of her new boyfriend. There was also evidence that Mother regularly took *Page 8 
the bus to work and that she had a friend who had offered her the use of her vehicle to visit her children. Mother had made minimal effort to visit with her children and there was no evidence of any bond between them.
 {¶ 16} The guardian ad litem spoke on behalf of the children, who were only three and four years old at the time of the permanent custody hearing. The guardian recommended permanent custody, emphasizing that during the two years that Mother had been working on her case plan, she had made little progress toward reunification. She further noted that Mother does not seem to appreciate the significance of this case and she doubted whether Mother would ever make the changes necessary to be reunited with her children.
 {¶ 17} The custodial history of the children included the past two years that they had been living out of their mother's custody. Even before LCCS filed its complaint in this case, the children had been residing with their maternal grandmother and Mother was living elsewhere. These children, who were only three and four years old at the time of the hearing, had spent most of their short lives living with caregivers other than their mother and they had not seen her at all during the five months prior to the hearing.
 {¶ 18} This Court has repeatedly emphasized that it cannot focus merely on the lengthy period that the children were in the temporary custody of the agency without examining the reasons for it and the implications that it had on the *Page 9 
children. See, e.g., In re CM., 9th Dist. No. 21372, 2003-Ohio-5040, at ¶ 16. During this long separation period, the children were thriving in foster care, yet Mother had taken few steps toward reuniting with them. As many witnesses had testified in this case, Mother did not seem to grasp the need for her to rise to the occasion and demonstrate that she was willing and able to care for these children.
 {¶ 19} The evidence demonstrated that both young children had lived several different places during their short lives and that they both have ongoing therapy needs and require a stable, consistent environment more so than other children their age. Neither of their parents nor any of their relatives was available to provide a suitable permanent placement for them. Therefore, the trial court reasonably concluded that these children were in need of a legally secure permanent placement that could only be achieved through a grant of permanent custody to LCCS.
 {¶ 20} Given the evidence before the trial court, it did not err in concluding that permanent custody was in the best interests of R.S. and J.S. As both prongs of the permanent custody test were satisfied, the trial court properly terminated parental rights and placed the children in the permanent custody of LCCS. The first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "O.R.C. 2151.414(B)(1)(D) VIOLATES DUE PROCESS." *Page 10 
 {¶ 21} Mother challenges the so-called "12 of 22" provision set forth in R.C. 2151.414(B)(1)(d), which allows the agency to satisfy the first prong of the permanent custody test by proving that the children have been in its temporary custody for at least 12 months of a consecutive 22-month period.
 {¶ 22} The record reveals, however, that LCCS did not move for permanent custody based on the "12 of 22" provision and the trial court did not apply it. The basis of LCCS's motion and the trial court's finding on the first prong of the test was that R.S. and J.S. could not be placed with either parent within a reasonable period and should not be placed with them. See R.C. 2151.414(E).
 {¶ 23} "`[A] person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the court.'" State v. Hendrix (2001), 144 Ohio App.3d 328, 331, quotingLos Angeles Police Dept. v. United Reporting Publishing Corp. (1999),528 U.S. 32, 38. "The constitutionality of a state statute may not be brought into question by one who is not within the class against whom the operation of the statute is alleged to have been unconstitutionally applied and who has not been injured by its alleged unconstitutional provision." Palazzi v. Estate of Gardner (1987), 32 Ohio St.3d 169, syllabus. "Constitutional questions will not be decided until the necessity for a decision arises on the record before the court."Christensen v. Bd. of Commrs. on Grievances Discipline (1991),61 Ohio St.3d 534, 535. *Page 11 
 {¶ 24} Consequently, as the trial court did not apply R.C.2151.414(B)(1)(d) to the facts of Mother's case, she is precluded from challenging its constitutionality on appeal. The second assignment of error is overruled.
 ASSIGNMENT OF ERROR III "[MOTHER] WAS NOT PROVIDED WITH COMPETENT TRIAL COUNSEL."
 {¶ 25} Finally, Mother contends that her trial counsel provided her with ineffective representation. In order to establish ineffective assistance of counsel, Mother must demonstrate that her counsel's performance fell below an objective standard of reasonable representation and that she was prejudiced by that performance.State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus.
 {¶ 26} Mother points to certain testimony and maintains that her trial counsel should have objected to its admissibility. As this Court explained in In re D.B., 9th Dist. Nos. 03CA0015-M and 03CA0018-M, 2003-Ohio-4526, at ¶ 9, because this hearing was held without a jury before a judge, the trial judge is presumed to have considered only properly admissible evidence unless the record affirmatively demonstrates otherwise. "The trial court is presumed to disregard hearsay and the burden is on appellant to overcome this presumption by showing that the trial court relied on hearsay in its decision." In reBrock (Oct. 5, 1998), 12th Dist. No. CA98-03-027, at *6, citing In reColter (Apr. 16, 1990), 12th Dist. No. CA89-07-011. *Page 12 
 {¶ 27} There is nothing in the trial court's four-page judgment to suggest that it relied on any of the evidence that Mother claims was inadmissible. Instead, the trial court focused on the undisputed evidence that Mother had failed to have any involvement in her children's therapy; she had failed to regularly visit them and had made only one telephone call to them in the past five months; that she had failed to secure stable employment or housing; and that she did not seem to appreciate the significance of this dependency and neglect case or her need to take action to be reunited with her children.
 {¶ 28} Mother has failed to demonstrate any prejudice resulting from trial counsel's alleged shortcomings and therefore has failed to demonstrate that her trial counsel was ineffective. The third assignment of error is overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of *Page 13 
Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
SLABY, P. J. DICKINSON, J. CONCUR.
[1] Mother also has an older child who is not at issue in this appeal.
[2] The trial court did not explicitly find the factor set forth in R.C. 2151.414(D)(5) to be relevant in this case. *Page 1