# United States Court of Appeals
# for the Fifth Circuit

_____

No. 24-20495
_____

United States Court of Appeals
Fifth Circuit

**FILED**

April 22, 2026

Lyle W. Cayce
Clerk

Scott Martin,

*Plaintiff—Appellant*,

*versus*

Marilyn Burgess, *Harris County District Clerk, In her Official and Individual Capacities*; Judge Genesis Draper, *In her Official and Individual Capacities*; Judge Shannon Baldwin, *In her Official and Individual Capacities*,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:23-CV-3228

_____

Before Clement, Graves, and Ho, *Circuit Judges*.

Edith Brown Clement, *Circuit Judge*:

For decades, Plaintiff-Appellant Scott Martin has earned a living collecting criminal defendants' contact information from the Harris County court system's public records and distributing that information to private attorneys. The Harris County Criminal Courts at Law ("HCCCL") issued an administrative order restricting from public access certain bail bond orders filed in misdemeanor cases. Martin challenged the constitutionality of the

administrative order. The district court dismissed his complaint for failure to state a claim. We affirm.

I

Martin operates a company called Pronto Direct Mail Marketing, Inc., in Harris County, Texas. For decades, Martin has collected criminal defendants' contact information and distributed it to private criminal defense attorneys. Martin has primarily relied on publicly available bail bond orders to obtain this information. His attorney clients depend on him to provide this information so they can engage potential clients and maintain a steady flow of business. Martin contends that his direct mail marketing business makes it easier for criminal defendants to secure competent private counsel, reduces the number of warrant arrests and the caseload of an already-overburdened public defender's office, and drives down costs for criminal defendants by encouraging more competition among lawyers.

On June 27, 2023, then-Presiding Judge Genesis Draper of the HCCCL issued an administrative order to the Harris County District Clerk, Marilyn Burgess. The administrative order requires the district clerk to "keep confidential the contents of any General Order Bond . . . or Personal Bond . . . filed in misdemeanor criminal cases assigned to the [HCCCL]." Only the "title, filing date, and page enumeration of the filed General Order Bond or Personal Bond is to remain viewable to the public." Burgess complied with the administrative order and began restricting from public view the contents of the General Order Bonds and Personal Bonds filed in misdemeanor cases. As a result, the criminal defendants' personal information—their street addresses, telephone numbers, and email addresses—provided in the bond orders was now restricted from public view. Judge Shannon Baldwin later became the presiding judge of the HCCCL and preserved the administrative order.

No. 24-20495

Martin tried to convince the HCCCL judges to reconsider the administrative order, but he was unsuccessful. Martin claims that he and his attorney clients were not notified or given an opportunity to be heard before the administrative order went into effect. He also claims that Burgess "goes beyond enforcing the four corners" of the administrative order by restricting the contents of other HCCCL bail bond orders, as well as bond orders filed in felony cases in the Harris County Courts Trying Criminal Cases. Since the administrative order was issued, Martin estimates that he and his attorney clients have lost tens of thousands of dollars in business (and continue to lose about $1,500 per week) because the number of publicly available bond orders from which he can collect criminal defendants' contact information has dropped by approximately ninety to ninety-five percent.

Martin sued Burgess, Judge Baldwin, and Judge Draper in their official and individual capacities.[1] He pressed that the administrative order is facially unconstitutional and is an unlawful prior restraint on his and his clients' protected commercial speech. He also alleged that the defendants did not have the authority to issue the administrative order. Martin brought claims under 42 U.S.C. § 1983 for violations of his First, Fifth, and Fourteenth Amendment rights. He sought injunctive relief, money damages, attorney's fees, and interest. In Martin's application for a temporary restraining order, he asked the district court to enjoin Burgess from enforcing the administrative order or, alternatively, to enjoin her from restricting from public view the criminal defendants' contact information in the bond orders.

Burgess, Judge Baldwin, and Judge Draper moved to dismiss. They argued that the administrative order does not violate Martin's constitutional

---

[1] Martin also sued the other fourteen HCCCL judges in their official capacities and the HCCCL itself, but he voluntarily dismissed his claims against these defendants because he never served them.

rights, and its issuance was not an *ultra vires* act. Nevertheless, they argued that they are immune from suit in their official capacities under the Eleventh Amendment and in their individual capacities under the doctrines of judicial immunity, quasi-judicial immunity, qualified immunity, and state-law official immunity.

The parties consented to proceed before Magistrate Judge Andrew Edison. After holding a hearing and requesting supplemental briefing, Judge Edison granted the defendants' motion to dismiss and denied Martin's TRO application. Judge Edison concluded that *Los Angeles Police Department v. United Reporting Publishing Corp.*, 528 U.S. 32 (1999), forecloses Martin's facial challenge under the First Amendment. He also concluded that the administrative order does not implicate the First Amendment right of access to criminal proceedings, and it is not a prior restraint on speech. Finally, Judge Edison held that Martin does not have a valid property interest in the criminal defendants' contact information. The court entered final judgment, and Martin timely appealed.

## II

This court reviews de novo a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6). *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017). We accept as true all well-pleaded factual allegations and view the facts in the light most favorable to the plaintiff. *Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 599 (5th Cir. 2021). A complaint will survive a motion to dismiss only if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III

Martin raises three principal arguments on appeal. First, he argues that the administrative order violates the First and Sixth Amendments, as

well as Texas state law. Second, he avers that the administrative order is void because it was issued *ultra vires*. Third, he insists that none of the defendants' immunities apply. Each argument fails.

## A

Martin brings a facial challenge to the administrative order under the First Amendment. To succeed, Martin must establish that the administrative order "prohibits a substantial amount of protected speech relative to its plainly legitimate sweep." *Moody v. NetChoice, LLC*, 603 U.S. 707, 744 (2024) (quoting *United States v. Hansen*, 599 U.S. 762, 770 (2023)).

*United Reporting* dooms Martin's First Amendment claim. That case concerned a California statute that required local law enforcement agencies to limit public access to arrestees' address information. 528 U.S. at 34. Before the statute was enacted, United Reporting Publishing Corporation had provided the publicly available names and addresses of recently arrested individuals to attorneys, insurance companies, drug and alcohol counselors, and driving schools. *Id.* But the new legislation restricted access to arrestees' addresses unless the requestor declared under penalty of perjury that (1) the request was being "made for a scholarly, journalistic, political, or governmental purpose" or "for investigation purposes by a licensed private investigator," and (2) the address information would not be used "to sell a product or service." *Id.* at 35.

United Reporting challenged the statute, arguing that it was facially unconstitutional under the First Amendment. *Id.* at 36–37. The Supreme Court rejected its challenge, concluding that the statute did not implicate the First Amendment. *Id.* at 40. The Court reasoned that the statute was "nothing more than a governmental denial of access to information in its possession," and it did not prohibit "a speaker from conveying information that the speaker already possesses." *Id.* Three justices wrote separately, and

they agreed on this point. *See id.* at 41 (SCALIA, J., concurring) ("[I]nsofar as this case presents a facial challenge to the statute, the fact that it is formally nothing but a restriction upon access to government information is determinative."); *id.* at 42 (GINSBURG, J., concurring) (agreeing that the statute "is properly analyzed as a restriction on access to government information, not as a restriction on protected speech"); *id.* at 45 (STEVENS, J., dissenting) ("I agree with the majority that the [statute] is really a restriction on access to government information rather than a direct restriction on protected speech.").

Martin tries to distinguish *United Reporting* in what he characterizes as three "foundational" ways. First, *United Reporting* concerned *arrestees*' address information, whereas the administrative order targets misdemeanor *criminal defendants*' contact information. Second, the *United Reporting* restriction came from a state legislature—not local judges. Third, *United Reporting* involved the "internal information" of law enforcement agencies, and "this case involves the District Clerk publishing public records pursuant to the First and Sixth Amendments to the U.S. Constitution and Texas State law."

Martin ignores the dispositive similarity between *United Reporting* and this case. *United Reporting* did not turn on the source of the restriction. It rested instead on the *nature* of the restriction. Here, the administrative order does not restrict speech—it restricts access to government information. In that sense, it is "a governmental denial of access to information in its possession"—not a prohibition on "conveying information that [Martin]

already possesses." *Id.* at 40. This distinction is what matters, and this is why we reject Martin's First Amendment challenge.[2]

Martin's Sixth Amendment challenge to the administrative order is perplexing. The Sixth Amendment guarantees criminal defendants "the right to a speedy and public trial, by an impartial jury," "to be informed of the nature and cause of the accusation" against them, "to be confronted with the witnesses against [them and] have compulsory process for obtaining witnesses in [their] favor," and "to have the Assistance of Counsel for [their] defence." U.S. Const. amend. VI. Martin does not sufficiently explain how the administrative order violates the Sixth Amendment. He says only that the Sixth Amendment applies in "full force" to criminal defendants, and the public's right to view the entirety of a public record, like court-issued bond orders, "stems from both the First and the Sixth Amendments." A charitable reading might suggest that because the administrative order prevents Martin from extracting defendants' contact information from the bond orders and sharing that information with prospective counsel, the defendants' Sixth Amendment right to counsel is implicated.

Whatever the true essence of this contention, it is forfeited. Martin did not plead a Sixth Amendment violation, and he has not adequately briefed this argument on appeal. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first

---

[2] Moreover, although the administrative order did not completely bar access to the criminal defendants' contact information, it could have gone that far "without violating the First Amendment." *United Reporting*, 528 U.S. at 40. After all, there is no constitutional right to access government information, "or to require openness from the bureaucracy." *Houchins v. KQED, Inc.*, 438 U.S. 1, 14 (1978) (citation omitted). "The Constitution itself is [not] a Freedom of Information Act . . . ." *Id.* (citation omitted).

instance in the district court . . . or by failing to adequately brief the argument on appeal.").

Turning to Martin's state law challenge, a violation of state law is not actionable under Section 1983. *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 n.4 (5th Cir. 1991). Assuming that Martin now seeks to bring a standalone state law claim, we refuse to entertain it because he did not plead one. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) ("As a general rule, this Court does not review issues raised for the first time on appeal.").

Grasping at another path to victory, Martin cites a string of twelve cases—without explanation—that purportedly confirm the administrative order's unconstitutionality. But the cases Martin cites reflect a misunderstanding of the difference between the First Amendment right to access judicial *proceedings* and the common law right to access judicial *records*. Neither provides Martin a basis for claiming entitlement to the criminal defendants' contact information in the bond orders.[3]

True, "[t]he press and public enjoy a First Amendment right of access to many criminal proceedings." *United States v. Ahsani*, 76 F.4th 441, 447 (5th Cir. 2023). But Martin is claiming access to information, so the First Amendment right to access criminal proceedings is inapplicable.

---

[3] Martin also submits that the administrative order implicates criminal defendants' rights to receive information about legal representation. *See Ficker v. Curran*, 119 F.3d 1150 (4th Cir. 1997)). *Ficker* concerned a Maryland law that forbade attorneys from soliciting victims and arrestees with direct-mail advertisements until thirty days after the accident occurred or charges were filed. *Id.* at 1151. Applying intermediate scrutiny to this regulation of commercial speech, the Fourth Circuit struck it down as "encroach[ing] impermissibly on First Amendment rights." *Id.* The court noted that a criminal defendant's interest in receiving information about legal representation was "most significant[]" in its analysis. *Id.* at 1153. *Ficker* is inapposite, however, because no commercial speech is at stake here— only "a governmental denial of access to information in its possession." *United Reporting*, 528 U.S. at 40.

As for the right to access judicial records, "[c]ourts have recognized that the public has a common law right to inspect and copy judicial records." *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). But that right is not applicable to the information in this case. This court has acknowledged that the public's access to judicial records "serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness." *Id.* at 849 (quoting *Littlejohn v. BIC Corp.*, 851 F.2d 673, 682 (3d Cir. 1988)). The administrative order targets various types of criminal defendant contact information. The title, filing date, and page enumeration of the bond orders remain available to the public, consistent with the interests served by public access to judicial records. *See id.* Thus, the common law right to inspect and copy judicial records is not applicable here.

In a last-ditch effort, Martin posits that his right to access the criminal defendants' contact information—and the defendants' right to have their private information available to the public—is clearly within the "penumbra" of rights guaranteed by the First Amendment, Sixth Amendment, and Texas state law. *Griswold v. Connecticut*, 381 U.S. 479, 484 (1965). To the extent Martin requests that we recognize a substantive due process right of unfettered access to criminal defendants' contact information in court-issued bond orders, we reject his invitation. "The mere novelty of such a claim is reason enough to doubt that 'substantive due process' sustains it . . . ." *Reno v. Flores*, 507 U.S. 292, 303 (1993). Martin has made no effort to show how this alleged right can be considered "deeply rooted in our history and tradition and . . . essential to our Nation's scheme of ordered liberty." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 237 (2022) (cleaned up).

No. 24-20495

B

Martin next argues that he is entitled to injunctive relief because the administrative order was issued *ultra vires*. A government official acts "'without legal authority,' and thus *ultra vires*, if he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Hou. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016). A plaintiff may bring an *ultra vires* claim against a government official "in certain narrow instances," *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017), such as when she "violate[s] statutory or constitutional provisions," *City of El Paso v. Heinrich*, 284 S.W.3d 366, 369 (Tex. 2009). To succeed on an *ultra vires* claim, a plaintiff "must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* at 372.

Martin complains that "there is no constitutional or statutory basis" for the administrative order. But the administrative order expressly provides one. Section 75.403 of the Texas Government Code vests the HCCCL presiding judge with the powers of "chief administrator of the offices of county court manager and county court coordinators, and of pretrial release services and all other court-related ministerial services in misdemeanor cases." Tex Gov't Code Ann. § 75.403(d)(3). For his part, Martin cites the Texas Public Information Act, *id.* §§ 552.001–552.407, and the Texas Code of Criminal Procedure. But, as he concedes, these provisions establish only a presumption that court records be made public.

Martin agrees that then-Presiding Judge Draper issued the administrative order in her administrative capacity. Thus, Judge Draper issued the administrative order under the express legal authority granted to her by Section 75.403; she did not exceed her administrative authority or violate the law in doing so. *See McRaven*, 508 S.W.3d at 239.

10

No. 24-20495

*Scham v. District Courts Trying Criminal Cases*, 967 F. Supp. 230 (S.D. Tex. 1997), does not compel a different result. In *Scham*, the district court struck down as *ultra vires* an administrative order issued by the Harris County felony courts that prohibited the district clerk and sheriff from disclosing a defendant's street address and phone number until the defendant retained an attorney. *Id.* at 231, 234. Unlike here, the *Scham* defendants could not articulate authority for issuing the order, and the district court was particularly concerned that the order "appear[ed] [to] obstruct[] the administration of justice." *Id.* at 233. Although Martin has tried to piece together something akin to an obstruction-of-justice argument related to the Sixth Amendment right to counsel, the court is not convinced that the administrative order does what Martin says it does. And for the reasons stated above, Martin has failed to show that Judge Draper acted without any legal authority.

C

Because we conclude that Martin has alleged no actionable claim against the defendants, we need not analyze whether any of their claimed immunities apply.

AFFIRMED.

11